[Civ. No. 542.    Third Appellate District.—February 26, 1909.]

# ANNIE E. CUMMINGS and JAMES J. CUMMINGS, Appellants, v. GEORGE ROETH and L. G. BURPEE, Respondents.

SPECIFIC PERFORMANCE—INADEQUATE CONSIDERATION—RELIEF PROPERLY DENIED.—In an action to enforce specific performance of a contract for the purchase of land valued at $45,000, for which plaintiff agreed to pay the sum of $20,000 in cash, and forty $1,000 bonds secured by locations of unpatented magnesite land, requiring a large expenditure for development, when the court found upon sufficient evidence that at the date of the purchase said bonds had no value, and have never since had any value, and that said sum of $20,000 and said bonds were not a full and adequate consideration for the purchase of said land, the court properly denied the relief of specific performance.

ID.—AMENDMENT OF COMPLAINT AT TRIAL—LEAVE TO FILE UNVERIFIED ANSWER NOT FILED—TRIAL OF ISSUES—CORRECTION OF RECORD—JUDGMENT UPON APPEAL.—When at the trial leave was granted to file an amended complaint, and an unverified answer thereto, which was not filed, but the case was tried upon the issues, the appellant cannot claim that the amended complaint was conclusively admitted, and that a new trial must be granted; the record may be corrected, and this court may by its judgment upon appeal direct the answer to be filed.

ID.—CODE RULE APPLICABLE TO FACTS—INADEQUACY—UNJUST AND UNREASONABLE CONTRACT.—So far as applicable to the facts here appearing, the rules embodied in section 3391 of the Civil Code are the law of the case, which provides that specific performance cannot be decreed against a party to a contract, "if he has not received an adequate consideration," or "if it is not as to him just and reasonable."

ID.—RULE IN EQUITY PRIOR TO CODE CHANGED.—The rule in equity prior to the code that when the parties deliberately contract with full knowledge of the situation, and each exercises an independent judgment, mere inadequacy of consideration, not amounting to evidence of fraud, would not preclude specific performance, is intentionally changed by the code, which is the law of this state.

ID.—POLICY OF CODE RULE.—It is the policy of the code rule to deny specific performance for inadequacy of consideration, notwithstanding the parties may have knowingly and intentionally entered into a contract for an inadequate consideration, and to remit the parties to their action at law for damages.

ID.—DEFENDANT NOT ESTOPPED.—No claim of estoppel of the defendant to contest a specific performance can be allowed on the ground that defendant was required to investigate, and did investigate, for himself as to the value of the bonds, and determined after such investigation that he would make the trade, it being determined by the court upon sufficient evidence that the bonds had in fact no market value.

ID.—RENTAL VALUE OF PREMISES NOT ALLOWED AS DAMAGES—FINDING NOT REQUIRED.—No damages could be claimed for the rental value of the premises except as an incident to a specific performance; and where a specific performance was denied, no finding was required upon such rental value.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Roger Johnson, for Appellants.

Welles Whitmore, for Respondents.

CHIPMAN, P. J.—This is an action to enforce the specific performance of a contract entered into by defendant Roeth with plaintiffs to convey land. Judgment passed for defendants from which and from the order denying their motion for a new trial, plaintiffs appeal.

The following are the facts averred in the amended and supplemental complaint, and in an amendment thereto filed by leave of court at the trial: That plaintiffs are husband and wife, and on March 26, 1906, defendant Roeth, being then the owner of certain real property, situated in the city of Oakland, entered into a written agreement with plaintiff, Annie E. Cummings, whereby he agreed to execute and deliver to her a deed conveying to her the said property free and clear of all liens and encumbrances, in consideration of the sum of $20,000.00 in cash to be paid to him, and forty gold bonds of the American Magnesite Company, a corporation, of the par value of $1,000.00 each, then held by plaintiff, J. J. Cummings, and which constituted a part of the only series of bonds ever issued by said company, each and all of which were of the same issue and value, and were payable to bearer,

"which said money and bonds said Annie E. Cummings therein agreed to pay and deliver to said Roeth for said property, and said property was at all times herein mentioned prior to April 18, 1906, of a value not to exceed $45,000.00, and said forty bonds were at all of said times, and now are, of a value in excess of $25,000.00, which said money and said bonds were then and there a full and adequate consideration and price for said property, and said contract was in all respects just and reasonable." It is averred that on April 7, 1906, plaintiff, Annie E. Cummings, "tendered to said Roeth the said sum of $20,000.00 in gold coin of the United States, and the said forty bonds of $1,000.00 each, . . . and she then and there demanded a conveyance of said premises as provided in said agreement, but said Roeth then and there wholly failed and refused to convey said property to said Annie E. Cummings, . . . and said failure and refusal has ever since continued," and that said Annie "ever since has been and now is, ready, able and willing to pay said money and to deliver said bonds for said property"; that prior to April 18, 1906, the rental value of said property was $450 per month and ever since that date the rental value has been $1,500 per month. It is then averred that defendant Burpee holds the legal title to said real property to secure an indebtedness of $16,000 from said Roeth to him.

Plaintiffs pray judgment requiring defendant Roeth to perform specifically his said agreement upon the payment of said money and the delivery of said bonds by plaintiff, Annie E., and that out of the purchase price all claims of said defendant Burpee be paid and he be required "to convey said land as the court may direct"; that an account be taken of the rental value, and plaintiffs be given judgment therefor.

Defendants deny specifically the averments of the complaint, and aver that said bonds "were not of the value of $1,000.00 each, or of any market value, or would be of any value to defendants; and defendants allege that $20,000.00 is not a fair, or full, or adequate consideration for said land and premises." For a separate answer defendants aver that said bonds "are not worth their par value, and are of very little or no value, and are of a value not exceeding $100.00 per bond"; that plaintiff (which one not stated) on March 26, 1906, represented that said bonds "covered property,

known as the Rose Brick Company, in truth and in fact, on said 26th day of March, 1906, said bonds did not cover or include the Rose Brick Company or any part thereof''; that on said day plaintiff represented that the bonds of said company were of their face value, whereas on said day, and ever since, they ''have not been of any value other than $100.00 per bond, and they are not marketable at $100.00 per bond, or at any value whatever, and their value is not capable of any pecuniary estimation''; that plaintiff, ''by fraud and false representations are endeavoring to force defendants to convey said premises to said plaintiff for an inadequate and unjust consideration, to wit, the sum of $20,000.00, and that the pretended 40 bonds are of no value, and do not form a part of the consideration for the conveyance of said property.''

The court found that the contract was entered into as set forth in plaintiffs' amended and supplemental complaint; that the bonds were of the face value as alleged; that the value of the land was $45,000 and no more on March 26, 1906; that tender was attempted to be made by plaintiffs, but was prevented by defendants, and that tender would have been useless for the reason that said Roeth would not have complied therewith; that plaintiff, Annie E., was on the day tender was attempted by her to be made, and ever since has been, and now is, ready and willing to pay said $20,000 and deliver said bonds; that neither of plaintiffs on March 26, 1906, nor at any other time, represented said bonds ''were of the face value or that they were of the value of $1,000.00 per bond, or made any representation as to the value of said bonds''; that ''plaintiffs have not nor has either of them attempted or endeavored, nor are either of them endeavoring by fraud or false representation to force defendants or any of them to convey said premises to the plaintiffs or either of them''; that said bonds did not cover the Rose Brick Company, nor did plaintiffs or either of them represent to said Roeth that said bonds included said Rose Brick Company, or any part thereof.

The court made no finding as to the rental value of said premises, but after making findings favorable to plaintiffs in substantially all their averments, except as to the value of said bonds, the court found as follows: ''8. On said 26th day

of March, 1906, the said sum of $20,000.00.and said 40 bonds were not a full and adequate or full or adequate consideration or price for said property, and the court finds that said bonds had not on said date and have never since had any value." Hence followed the conclusion of law that plaintiffs were not entitled to judgment, and that they take nothing by their action. If finding No. 8 is supported by the evidence a finding as to the rental value of the land involved becomes immaterial, and whether the evidence supports the finding is the principal question in the case.

1. At the trial the court granted plaintiffs leave to file an amendment to paragraph 3 of the amended and supplemental complaint. "The Court (to Mr. Whitmore, attorney for defendants)—You had better file a pleading in form denying the amendment, and verification may be waived; it may be treated as if it was a verified answer. Is that consented to? Mr. Johnson (Attorney for plaintiff)—Yes, sir. Mr. Whitmore—Then I will put in a general denial." The trial was resumed, evidence pro and con admitted upon the issues and judgment rendered, but no answer to this amendment was filed. It is claimed that "this condition of the record leaves the finding No. 8, entirely without support and renders a new trial imperative." (Citing *Green* v. *Chandler,* 54 Cal. 626; *Gamache* v. *School District,* 133 Cal. 145, [65 Pac. 301].)

In the first of these cases the action was to foreclose a mechanic's lien; there was no allegation in the complaint that the whole of defendants' land was required for the convenient use of the structure, but the trial court found that it was so required. The supreme court held that "the finding was not within the issues made by the complaint and answer." The court added: "and there was no evidence whatever given on the trial, or at the time of rendering judgment, upon which the court could determine" the fact as found. The other case cited was where certain findings were held "to be entirely outside of any issue made by the pleadings."

The failure to file the answer is not ground for reversal of the judgment. The record can still be corrected to conform with the order permitting the amendment (*French* v. *McCarthy,* 125 Cal. 508, [58 Pac. 154]), and the judgment on appeal may direct the lower court to cause the answer to be

filed. (*Alameda County* v. *Crocker,* 125 Cal. 101, [57 Pac. 766].)

2. So far as may be applicable to the case here, section 3391 of the Civil Code furnishes the rule by which we are to be guided as to the law of the case. It provides as follows: "Specific performance cannot be enforced against a party to a contract in any of the following cases: 1. If he has not received an adequate consideration for the contract; 2. If it is not, as to him, just and reasonable." The other provisions relate to fraud and mistake, neither of which is here involved.

This section has been considered many times by our supreme court. It was said in *Flood* v. *Templeton,* 148 Cal. 374, [83 Pac. 148]: "It is a rule of equity, embodied in section 3391 of the Civil Code, that specific performance cannot be enforced against a party to a contract if he has not received adequate consideration for the contract, and if the contract is not, as to him, just and reasonable." There seems to be no definite rule, and it would be impracticable to establish one, fixing the exact proportion of the actual value of the property to the consideration mentioned in the contract, which the courts will regard as bringing the particular case within the principle. It may be more or less than one-half, depending somewhat upon the circumstances.

In *White* v. *Sage,* 149 Cal. 613, [87 Pac. 193], the cases are examined, and it was there shown that contracts perfectly valid, free from fraud or mistake as the contract here is found to have been, may nevertheless be denied specific performance if harsh, unjust and unfair. And the doctrine applies equally to vendor and vendee. It was said: "There must be a showing of the value, at least, so that the court can determine whether or not it was in reasonable proportion to the price to be paid, or of other facts which are sufficient to satisfy the court that the contract is just and reasonable to the buyer in all its material elements." In the oft-cited case of *Seymour* v. *De Lancey,* 6 Johns. Ch. (N. Y.) 222, 3 Cow. 445, [15 Am. Dec. 270], it was said: "Though mere inadequacy is not of itself sufficient to set aside a transaction, yet it may be sufficient to induce the court to the exercise of its discretionary power to enforce a specific performance of a private contract for the sale of land, and to leave the party to seek his compensation in damages at law, especially where

the inadequacy of price is so great (a little less than one-half in that case) as to give the contract the character of unreasonableness, inequality and hardship.'' We must hold, in view of the decisions upon the question, that if it be true that the bonds in question were without value, and that the only consideration promised was $20,000 for property of the value of $45,000, it was within the discretion of the chancellor to deny the relief prayed for. The only remaining question, therefore, is—Does the evidence support the finding that the bonds ''had not on said date (date of the contract), and have never since had any value''?

The evidence is, and it is admitted, that the bonds never had any market value, and the reason given was that they had never been listed or on sale in open market; there is evidence that some bonds were sold in the east, prior to March 26, 1906, at par, but under what circumstances does not appear. The only attempt to show value, aside from individual opinions of some holders of the bonds that they were worth their face, was by evidence of the value of certain magnesite mines which are the security for the bonds. These mines are some distance from Livermore station in this state, and the ores cannot be hauled by team so as to produce any profit in selling them; it is conceded that it will be necessary to build a railroad from Livermore to the mines at a cost estimated at $175,000, before the ore can be profitably moved. There is a large deposit at the mines—some twenty-seven locations covered by the bonds, but its value is potential and speculative. These mining locations are not patented, and $100 worth of work must be done annually on each to preserve the right to ultimate complete title. The trust deed, under which the bonds are secured, gives no assurance that this will be done, and the deed gives to a minority holder of the bonds no right of foreclosure for any default, a majority only having this right. No interest had been paid from earnings of the company, and none at all for the year immediately preceding the date of the trial, although interest had been paid, from some source, up to the date of the contract. The trust deed provided that the stockholders of the company should not be liable for any default in payment of principal or interest. In short, the value of the bonds depends entirely upon the value of the mines and their producing capacity.

This may some day be ample, and may meet the anticipations of the witnesses, but we cannot say that the court, upon the evidence before it, made its finding without sufficient support. Neither the bonds nor the mines were shown to have any market value at the time of the transaction.

3. It is urged with much insistence that defendant, Roeth, is estopped from claiming inadequacy of consideration, and that having made a contract in good faith, and upon his own independent judgment, he will not now be heard to plead inadequacy of consideration. It appeared from the uncontradicted testimony (in fact, defendants offered no testimony whatever) that before plaintiffs would consent to consider the matter of purchasing the property, they required defendant, Roeth, to investigate for himself the value of these bonds, and whether he would make the trade. Considerable dickering back and forth was had between them, and counter propositions made before the offer of plaintiffs was accepted, which was to pay $20,000 and deliver forty of the bonds for the property.

Professor Pomeroy says: ''The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own judgment as to the value of the subject matter, courts of equity should not, and will not, interfere with such valuation.'' (2 Pomeroy's Equity Jurisprudence, sec. 926.)

But it was held in *Morrill* v. *Emerson*, 77 Cal. 114, [19 Pac. 190], that under section 3391, Civil Code, specific performance will not be decreed unless there was adequate consideration. The court said: ''Before the code, the preponderance of authority was, that mere inadequacy of consideration, not amounting to evidence of fraud, was not ground for refusing specific performance. (Citing the section.) Here the inadequacy of consideration seems to be mentioned as a distinct ground from the injustice and unreasonableness and the provision seems to be explicit and absolute.'' (Cited in *Windsor* v. *Miner,* 124 Cal. 494, [57 Pac. 386] ; *Prince* v. *Lamb,* 128

Cal. 129, [60 Pac. 689] ; *Newman* v. *Freitas,* 129 Cal. 283, [61 Pac. 907] ; *Stiles* v. *Cain,* 134 Cal. 172, [66 Pac. 231].) In *Windsor* v. *Miner,* it was held as essential to the relief of equity that plaintiff must allege and prove adequacy of consideration and fairness in the contract. The cases on the point are cited in *Prince* v. *Lamb,* holding to a strict compliance with subdivisions 1 and 2 of section 3391. In *Stiles* v. *Cain,* it was decided that a complaint for specific performance of a contract to convey land must state facts showing that it is based upon an adequate consideration, and is, as to the defendant, fair and just; and it follows that if these facts must be alleged they must be proved.

It seems to be the policy of the statute to deny the equitable relief of specific performance, even if the parties knowingly and intentionally entered into the contract, where the case falls within the provisions of the statute, and to remit the party aggrieved to his action at law for damages. The observations of the writer of the opinion in *Bird* v. *Potter,* 146 Cal. 286, [79 Pac. 970], relied upon by appellants, must be read in the light of the facts in that case, and it will then be seen that the court did not intend to modify or in any respect depart from the rule laid down in section 3391. In the case cited the trial court found as fact "that at that time, namely, the 16th day of May, 1902 (date of the contract) the said sum of $450.00 (the agreed price for the lot) was the reasonable value of said lot; and that the said contract was and now is fair and just," thus bringing the case directly within the code section 3391 and making it a case, as the court held, coming under section 3388 of the same code.

· In a note to section 193 of Pomeroy on Contracts (Specific Performance), it is stated that "where the parties have knowingly and deliberately fixed upon a price, however great or small, there is, of course, no occasion nor reason for interference by a court, for owners have a right to sell their property for what they please, and purchasers have a right to pay what they please." (Citing *Harris* v. *Tyson,* 24 Pa. 360, [64 Am. Dec. 661] ; *Davidson* v. *Little,* 22 Pa. 245, 247, [60 Am. Dec. 81].) These cases make a distinction between executed and executory contracts. *Davidson* v. *Little* was the case of an executed deed to land. The court said: "A party who complains that he has been wronged, and brings a bill on such

grounds, must make a clear case before he can expect a decree to cancel his own deed. If, however, he repents before the execution of the contract and stands upon the defensive, he may have all the advantage of his adversary's weakness as well as his own strength. . . . An unexecuted contract has often been annulled, or the vendee left to his action at law, when there was no proof of foul practice, except inequality between the price agreed on and the thing sold. But inadequacy alone must be rejected as insufficient to justify cancellation of a conveyance, except in the case of an heir expectant, who anticipates his inheritance by selling it before he gets it.'' Whether our statute admits of a distinction between executed and executory contracts need not be considered. for in the present case the contract is executory and does not class itself with such as are referred to in the abovementioned note of Mr. Pomeroy.

4. Appellants cite *Gregg* v. *Carey,* 4 Cal. App. 354, [88 Pac. 282], to the point of the estoppel pleaded and also to the point that they are entitled to damages on the pleadings and evidence, if specific performance be denied.

No damages are claimed except for rentals of the property, and these could only be recovered in the event that plaintiffs succeeded in their main contention and were given the decree prayed for. The court did, however, allow damages in the case cited to the extent of the money paid on the purchase price. But here no money has been paid. The doctrine of estoppel was properly applied to defendant, Carey, because he directed the agent of plaintiff ''to see defendant, Lewis, in the matter,'' under such circumstances as estopped him from repudiating the contract, as falling within the provisions of sections 2300 and 2317, Civil Code. Specific performance of the contract was denied on the ground that the defendants were unable to make a deed to the property.

The judgment and order are affirmed with directions that the trial court cause defendants to file an answer to the amendment to the complaint in accordance with its order made at the trial, and as of the date when said order was made.

Burnett, J., and Hart, J., concurred.