[L. A. No. 2771. Department One.—December 2, 1911.]

## A. J. WILSON and R. C. WILLIS, Appellants, v. LOWELL WHITE, Respondent.

SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND WITHOUT CROP—CONSTRUCTION OF CORRESPONDENCE—FINDING AGAINST EVIDENCE.—In an action for specific performance of a contract for the sale of land, it is held, upon the construction of all the telegrams and letters which passed between the parties, that a final contract was reached between them for the sale of defendant's orange grove, without the ungathered crop, for the price of fourteen thousand dollars cash, and that the finding of the court to the contrary is against the evidence.

ID.—PROPOSAL FOR LAND INCLUSIVE OF CROP AS PART OF REALTY.—As between vendor and vendee, a growing crop is part of the realty, and an offer merely to purchase the land is an offer to include the ungathered crop as going with the land. As between them such crop is not personal property, but would pass as part of the realty, unless there has been a constructive severance, and in the case of a voluntary conveyance of the land, it passes to the grantee, unless specially reserved by the grantor.

ID.—RESERVATION OF CROP NOT TO BE ESTABLISHED BY PAROL EVIDENCE TO VARY DEED.—Under the weight of authority, as well as the better reasoning, a reservation of a growing or ungathered crop is not to be established by parol evidence to impair the effect of a writing which is essential to the transfer of the property, and which purports to convey the land without reservation.

ID.—VARIANCE FROM PROPOSAL OF PURCHASER—QUALIFIED ACCEPTANCE WITHOUT CROPS—NEW PROPOSAL—SUBSEQUENT ACCEPTANCE—CONTRACT.—Where the proposal to buy the land for a fixed price was accepted, *without crop*, such qualified acceptance became a new proposal, and when the buyer treated the proposal as accepted, and claimed a contract and tendered the purchase money, a contract of purchase without the crop was thereby concluded. In such case, the purchaser's demand for a deed was for one without the crop, and he could be compelled to accept a deed reserving the same. His acceptance was binding when put in the course of transmission.

ID.—AGENCY OF BROKERS FOR PLAINTIFFS—TELEGRAMS AND LETTERS FROM OWNER BINDING PLAINTIFFS.—Where the plaintiffs negotiating for land in this state with an owner living in Texas, communicated with him through the agency of their broker, the receipt of telegrams and letters from the owner by such brokers was binding upon the plaintiffs, whether communicated to them or not.

ID.—CLAIM OF PLAINTIFFS FOR WATER STOCK—QUESTION OF APPURTENANCE TO LAND.—A claim by the plaintiffs for shares of water stock for the irrigation of the land, though not affecting the validity of the contract of sale, must rest for its maintenance, if at all, on the ground that it is not personal property, but is an appurtenance to the land, and is therefore covered by the contract.

ID.—INADEQUACY OF CONSIDERATION PRECLUDING SPECIFIC PERFORMANCE. —Under the Civil Code, specific performance cannot be enforced against a party to a contract, if he has not received an adequate consideration for the contract, or if it is not as to him just and reasonable. Inadequacy of consideration is made a separate ground for refusing specific performance. The difference between the true value and. the agreed value may be such as to warrant the conclusion that specific performance should be refused on the ground alone of the inadequacy of consideration. The question in such cases is whether the price agreed is a fair and adequate price under all the circumstances.

ID.—SUPPORT OF FINDINGS—QUESTION OF FACT FOR TRIAL COURT.—It is held that there was ample evidence to support the findings of the trial court that the value of the property at the time of the negotiations was sixteen thousand dollars, including the crop then on the trees, and that the value without the crop was fifteen thousand dollars, and that the sum of fourteen thousand dollars net cash was and is not a fair, just, reasonable, or adequate price for the property without the crop. It is peculiarly a question of fact for the trial court to determine in the light of all the circumstances, and its conclusion should not be set aside, when supported by the evidence.

ID.—COMPARATIVELY SMALL DIFFERENCE BETWEEN VALUES—OTHER CIRCUMSTANCES SHOWING INADEQUATE CONSIDERATION.—Although a difference of one thousand dollars between the agreed value of four-teen thousand dollars and the actual value of fifteen thousand dollars, without the crop, seems comparatively small, yet it cannot be said

that the finding of inadequacy of consideration is without support, in view of the circumstances shown that the vendor whose property in this state was the subject of the contract, resided in another state, and was dependent upon those near the property for information, while the vendees were on the ground, and had dealt with other orange growers in the vicinity, and well knew the value of plaintiff's property.

ID.—MEASURE OF DAMAGES FOR BREACH—ABSENCE OF EVIDENCE—SUPPORT OF FINDING.—The measure of damages for breach of an agreement to convey real estate, is under section 3306 of the Civil Code, "the price paid, and expenses, properly incurred in examining the title and preparing the necessary papers, with interest thereon." But where the court found that plaintiffs had suffered no damage whatever, and there was no evidence to show any such expenditure by the plaintiffs, and no showing that would sustain any conclusion of damages, the finding is supported, and there is no ground for reversal.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Eugene C. Campbell, for Appellants.

Halsey W. Allen, for Respondent.

ANGELLOTTI, J.—This is an appeal by plaintiffs from a judgment in favor of defendant and from an order denying their motion for a new trial in an action brought by them for the specific performance of an alleged contract for the sale to them by defendant for fourteen thousand dollars cash, of certain real property in San Bernardino County, California, described in the complaint as being subdivision lot 1 in block 35, East Redlands, according to the plat thereof on record in the office of the county recorder of said county, together with ten shares of the capital stock of the East Redlands Water Company, a corporation, said property containing ten acres more or less and being planted to orange trees.

Defendant, the owner of the property, was a resident of the state of Texas, and during the whole period of the negotiations for a sale of the property was in that state. The plaintiffs during all of said period were in the city of Redlands,

California, as were also John W. Gill and W. E. Rabbeth, the real estate brokers through whom the negotiations were had. Said Gill and Rabbeth had received a letter written by defendant to them on April 6, 1909, in reply to an inquiry on their part asking for a selling price on the property, in which he said he would sell this property for fifteen thousand dollars without the crop. Plaintiffs' negotiations with defendant for the purchase were entirely by means of letters and telegrams which will hereinafter be set forth. To these letters and telegrams we are confined in determining whether there was any contract between plaintiffs and defendant for the sale and purchase of the property.

During the whole period of the negotiations there was on the orange trees on said property about one third of the annual crop of oranges, the remainder having been harvested. This third of the crop was of the value, according to a finding of the trial court which is sufficiently sustained by the evidence, of twelve hundred dollars, and the same was not harvested until some time in May, 1909. The evidence was also sufficient to sustain the conclusion of the trial court that these oranges so remaining on the trees had not been theretofore sold by defendant, and that he was then the owner thereof.

On April 13, 1909, at the request of plaintiffs, who within a day or two thereof had been shown the property by Gill and Rabbeth and solicited to make an offer for the same, the following telegram was sent to defendant:

"4-13-09, REDLANDS, CAL.

"To J. LOWELL WHITE,

"Kingsville, Texas.

"Have offer 14,000 net to you half cash lower ten advise sale. Much scale in grove.

"GILL & RABBETH."

On April 15, 1909, defendant answered this telegram by both telegram and letter. The telegram was as follows:

KINGSVILLE, TEX. Apr. 15-09.

"GILL & RABBETH, Redlands, Cal.

"'On terms named will not sell for less than fifteen thousand.

"J. LOWELL WHITE."

The letter was simply a confirmation of the telegram. This telegram was shown to plaintiffs and on the same day, at their

request, another telegram was sent to defendant. It was as follows:

"REDLANDS, CAL., Apr. 15, '09.

"J. LOWELL WHITE, Kingsville, Texas.

"Cannot get fifteen. Client offers fourteen cash.

"GILL & RABBETH."

On April 16th defendant replied by telegram as follows:

KINGSVILLE, TEXAS, Apr. 16.

"Gill & Rabbeth, I accept fourteen thousand net cash to me for lower ten without crop.

"J. LOWELL WHITE."

On the same day defendant mailed a letter to Gill & Rabbeth confirming the telegram, and saying he would be glad to hear further in regard to details of the sale, asking that they have their client deposit the money in First National Bank at Redlands for delivery on presentation of a satisfactory deed, and suggesting that the transfer be made on May 1st.

Before the receipt of the last named telegram, and on April 16th, one W. D. Bethell offered Gill & Rabbeth for the defendant fifteen thousand dollars net cash for the property, without the crop, he (Bethell) to pay Gill & Rabbeth the commission on the sale, and Gill & Rabbeth accepted such offer, and received from Bethell three thousand dollars on account of such purchase price. Thereafter, on the same day, the telegram last quoted was received, and they showed the same to plaintiffs, and at the same time informed them that prior to its receipt they had sold the property to Bethell, without the crop, for fifteen thousand dollars net cash to defendant.

On April 17th, plaintiffs tendered to Gill & Rabbeth fourteen thousand dollars and demanded a conveyance of the property, and this tender was rejected by said brokers.

On the same day plaintiffs sent directly to defendant, this being the first time they had communicated directly with him and the first time that the names of the proposed purchasers were communicated to him, the following telegram, viz.:

"Ar. 17.

"Mr. JOSEPH L. WHITE,

"Kingsville, Texas.

"On April 15 last, we offered by telegram sent through Gill & Rabbeth to pay you fourteen thousand dollars cash for your

sub. lot one, block thirty-five, East Redlands, San Bernardino County, California, and on April sixteenth last through Gill & Rabbeth received your acceptance. Will you carry out and perform said contract of sale? If so, wire instructions concerning delivery of deed and payment of money. Wire answer.

> "A. J. WILSON
> "R. C. WILLIS."

On the same day Gill & Rabbeth telegraphed to defendant as follows:

> REDLANDS, CAL., April 17, 1909.
>
> "J. LOWELL WHITE,
>     "Kingsville, Texas.
>
> "Before last telegram came we sold grove another party fifteen thousand. First party claims grove at fourteen. Full explanation by letter.
>
> "GILL & RABBETH."

and at the same time wrote to him an explanation of the situation.

On April 19th plaintiffs again telegraphed defendant as follows:

> REDLANDS, CAL. April 19, 1909.
>
> "J. LOWELL WHITE,
>     "Kingsville, Texas.
>
> "Have deposited in your name $14,400, with Citizens National Bank of Redlands, California, and demand deed of sub. lot one, block 35, East Redlands. Letter follows.
>
> "WILSON & WILLIS."

On the same day defendant telegraphed plaintiffs that having had no negotiations with them, he regretted that he was unable to answer their message of the 17th, and on April 23rd he telegraphed the Citizens National Bank of Redlands not to accept for his account the money deposited by plaintiffs. This telegram of April 19th was apparently sent in reply to plaintiffs' telegram of April 17th, and so far as appears, before plaintiffs sent their telegram of April 19th.

One of the questions presented is whether, in view of these facts, a contract in writing for the sale of the property by defendant to plaintiffs was created.

The trial court, among other things, found that there was no understanding or agreement between plaintiffs and de-

ffendant as to the sale of the orange crop on the trees by
defendant, or as to any disposition of said crop; that plain-
tiffs never accepted the counter proposition of defendant as
contained in his telegram of April 16th as to the sale of the
property "without crop," or agreed with defendant for the
purchase of the property for fourteen thousand dollars net
cash, without crop. It further found that plaintiffs never
offered fourteen thousand dollars, or any sum, for the prop-
erty here sought and that defendant never accepted in writing
any offer of plaintiffs, and that the tender and demand of
plaintiffs was for a conveyance of the premises "including the
crop of oranges then growing on said property."

In determining the question thus presented it is necessary
to consider certain additional facts which must be taken as
established on this appeal in view of the record before us.

The trial court found, in response to an allegation of the
complaint to that effect, which was denied by the answer,
"That said Gill & Rabbeth in sending and receiving the afore-
said telegrams and letters set out in paragraphs VI and VII
of the amended complaint were acting as the agents of plain-
tiffs and were authorized by plaintiffs to despatch and receive
said communications, by telegram and letter, from defendant
for plaintiffs." The letters and telegrams referred to in-
cluded all those of April 13th, 15th and 16th hereinbefore set
forth. We regard this finding as most vital to plaintiffs. If
Gill & Rabbeth were lawfully acting as plaintiffs' agents in
sending and receiving such letters and telegrams, it is obvious
that the receipt by Gill & Rabbeth of any such letter or
telegram from defendant was a receipt thereof by plaintiffs,
their principals, which rendered it unnecessary, in order to
make the same effective as a proposition or acceptance, that
the same should be communicated to plaintiffs by Gill & Rab-
beth. On the other hand, if Gill & Rabbeth were not the
agents of plaintiff in such matter, but were the agents of
defendant, it is obvious that as long as any such letter or
telegram from defendant was not communicated to plaintiffs
for the purpose of carrying on the negotiations, it was no
more effective as a proposal or acceptance than if it had
remained in defendant's pocket in Texas. Being in the pos-
session of his agent, it would still have been in his possession,
undelivered. There was sufficient evidence to support this

finding, and it must here be assumed that Gill and Rabbeth were the agents of plaintiffs in such matter. There was also evidence to support a conclusion that defendant knew that Gill & Rabbeth were acting as the agents for a proposed purchaser in making the propositions for purchase, and not as his agent therein.

The trial court found that Gill & Rabbeth on April 16, 1909, before the receipt of defendant's telegram of that date, acting as agents for defendant, sold the property to one Bethell for fifteen thousand dollars net cash, Bethell to pay the sale commission; that at that time Bethell paid Gill & Rabbeth three thousand dollars cash on such purchase and took possession of the property and has ever since been in possession. This finding, except in so far as it states that Bethell paid Gill & Rabbeth three thousand dollars on account of an attempted purchase by him, is entirely without support in the evidence. There was absolutely nothing in the evidence to warrant the conclusion that Gill & Rabbeth had been authorized by defendant to make any contract on his behalf for the sale of any of his property, or that they were anything more than mere brokers with power merely to find a purchaser. (See *Lambert* v. *Gerner,* 142 Cal. 399, [76 Pac. 53]; *Grant* v. *Ede,* 85 Cal. 418, [20 Am. St. Rep. 237, 24 Pac. 890].) And there is nothing in the record to support a conclusion that defendant in any way ratified the attempted action of Gill & Rabbeth in regard to a sale to Bethell prior to the sending or receipt by him of plaintiffs' telegram of April 19th, or did anything that would operate as an estoppel in Bethell's favor. So we must determine the question raised in regard to the matter of the orange crop without regard to the attempted action of Gill and Rabbeth in the matter of a sale to Bethell.

While for some purposes growing crops are considered personal property, it is practically elementary law that as between the vendor and vendee of real property having a growing crop thereon, such crop constitutes a part of the realty (unless there has been a constructive severance), and in the case of a voluntary conveyance of the land passes to the grantee unless specially reserved by the grantor. And while there are some authorities holding that an oral exception or reservation of the crop is effective in such a case, the weight of

authority as well as the better reasoning are to the effect that
where a writing is essential to the transfer of real property,
such a reservation cannot be established by parol to impair the
effect of the writing purporting to convey the land without res-
ervation. (See 8 Am. & Eng. Ency. of Law, 2d ed., pp. 303
and 306.) And this court appears to have committed itself to
this doctrine in *Fisk* v. *Soule,* 87 Cal. 313, [25 Pac. 430], where
it was substantially said that a written contract for the sale of
land which did not contain any reservation of the crops bound
the grantor to include the crops in his conveyance, notwith-
standing an oral understanding that the crops were not to be
included, "unless corrected on the ground that by mistake it
was not in accordance with the agreement actually made."
As we have already seen, the evidence was sufficient to sup-
port the conclusion of the trial court that the crop remaining
on the trees on this property had not been sold at the time of
these negotiations, and that there had been no constructive
severance thereof from the land.

The first offer of plaintiffs to purchase the property was
that of April 13th. So far as the matter of the crop was con-
cerned it was clear and certain in its terms. It was an offer
of fourteen thousand dollars net, half cash, for everything
that would then pass by a grant of the land. This, as we have
seen, necessarily included the crop on the trees. This offer
having been rejected by defendant's telegram of April 15th,
plaintiffs on April 15th made a second offer "of fourteen
cash," the necessary implication of the language used being
that it was an offer of fourteen thousand dollars net cash for
the same property referred to in the telegram of April 13th,
viz., the realty as it stood, without reservation or exception
of any kind. To this, on April 16th, defendant answered
by telegram "I accept fourteen thousand net cash to me for
lower ten *without crop.*" (The italics are ours.) His letter of
the same day was simply a confirmation of this message,
with expressions indicating that he was satisfied that the
purchase would be proceeded with upon the terms stated by
him.

It may be conceded that this telegram introduced a pro-
vision for a reservation in the proposed conveyance that was
not contained in the written offer of plaintiffs, and that de-
fendant's acceptance was, therefore, a qualified acceptance,

which under our law constituted a new proposal. (Civ. Code, sec. 1585.) When this new proposal was received by Gill & Rabbeth it was, in legal effect, received by plaintiffs. There is nothing to indicate that it was revoked by defendant at any time before the receipt by him of plaintiffs' telegrams of April 17th and 19th. (Civ. Code, sec. 1587.) Defendant's telegram of April 19th to plaintiffs was in no sense a revocation of his previous proposal. If either of these telegrams constituted an acceptance by plaintiffs of defendant's new proposal, the contract was complete so far as the matter of the reservation by the defendant was concerned. "A proposal may be revoked at any time before its acceptance is communicated to the proposer, but not afterwards." (Civ. Code, sec. 1586.) We do not see how it can be held that plaintiffs' telegrams of April 17th and 19th can be considered otherwise than as an acceptance of defendant's proposition. Especially is this true of their telegram of April 19th, when read in connection with that of April 17th. It was an absolute compliance with the terms of the proposition made by defendant's telegram so far as the consideration named was concerned (the four hundred dollars additional being the amount of the agents' commission), and although silent on the question of reservation of crop so far as express words were concerned, it necessarily implied acquiescence in the making of such a reservation. No other construction could reasonably be given to the telegram, in the light of the other telegrams and letters that had passed between the parties, than that the same was an absolute and unconditional assent to the terms proposed by defendant. The demand therein for a deed was clearly, in effect, one for a deed of the property without the crop. It is not to be doubted in view of all the writings that plaintiffs could have been compelled to accept in full satisfaction of the contract a deed containing such a reservation. No condition having been provided by the proposer concerning the communication of the acceptance, any reasonable and usual mode could be adopted, and the consent must be deemed to have been fully communicated between the parties as soon as plaintiffs put their acceptance in the course of transmission to defendant. (Civ. Code, secs. 1582 and 1583.)

It may be said, in passing, that nothing could be clearer, in view of the evidence, than that it was the understanding of all

parties that the crop was not to go with the land, but, as we have said, the agreement to this effect must be shown by the writings.

There is no force in any of the other points made against the validity of the alleged contract. Some of these claims rest upon the assumption that there had been a sale to Bethell before the contract with plaintiffs was perfected, an assumption that we have seen is not warranted. The series of letters and telegrams passing between Gill & Rabbeth, acting for plaintiffs, and defendant, and between plaintiffs and defendant, contained all the essential elements expressed in such a way as to make a complete, certain, and definite contract between the parties. This is certainly true both as to the description of the property and the names of the purchasers, the matters as to which defendant makes his main contention. It cannot be disputed that the description of the property contained in the telegram of April 17th was certain and complete, and the court finds that it was understood by all the parties that the "lower ten" mentioned in the earlier telegrams "was the property described in paragraph II of the amended complaint," which included no other land than that described in the telegram of April 17th, as well as that of the 19th. It was shown that defendant owned no other ten-acre piece of land, and that he owned only one other parcel in San Bernardino County, one containing 14 7-10 acres. It cannot be disputed that plaintiffs themselves could effectually continue in their own names the negotiations theretofore carried on in the name of their agents.

Some claim is made based on the allegations of paragraph II of the amended complaint that the defendant is the owner of certain land (describing it), "together with ten shares of the capital stock of the East Redlands Water Company, a corporation," and on the prayer of such complaint by which plaintiffs asked that the defendant be required to execute a conveyance to them of the property hereinbefore described. We do not see how this in any way affects the question of the *validity* of the contract. It is apparent, of course, from what we have said, that if the water stock referred to in this allegation was not appurtenant to the land, and consequently was personal property, the contract made did not include it. If, on the other hand, it was appurtenant to the land, as is

claimed in plaintiffs' brief, and therefore legally part of the land, it was covered by the contract.

We conclude, therefore, that there was a good and sufficient contract in writing between these parties for the sale of the land described in paragraph II of the amended complaint, and that the findings of the trial court to the contrary are not sustained by the evidence.

We are now brought to the remaining claims of defendant, which relate to the right of plaintiffs to have specific performance of the contract. It is unnecessary to consider his contention that the complaint fails to state facts showing that the contract should be specifically enforced, for we are satisfied that we cannot interfere with the action of the lower court denying such relief in view of its conclusion upon the question of the fairness, justness, reasonableness, and adequacy of the consideration. It is alleged in the amended complaint that at all the times mentioned fourteen thousand dollars "net cash was and is now a fair, just, reasonable and adequate price for the said property described in paragraph II." This was denied by the answer and it was alleged therein that said property was and is reasonably worth eighteen thousand dollars. As we read the findings, the trial court concluded that the value of the property as it stood at the time of the negotiations, including the crop then on the trees, was sixteen thousand dollars, and that the value without such crop was fifteen thousand dollars. The court further found "that the sum of $14,000, net cash, was and is not a fair or just or reasonable or adequate price for the property," without the crop. There was ample evidence to sustain the conclusion of the trial court as to the real value.

Our Civil Code (sec. 3391) provides that specific performance cannot be enforced against a party to a contract: "1, if he has not received an adequate consideration for the contract; 2, if it is not, as to him, just and reasonable." The claim of plaintiffs is that in view of the small difference between the true value and the consideration agreed on, it cannot be held that there was such an inadequacy in the price agreed on as to support the conclusion of the trial court, quoting Mr. Pomeroy to the effect that the rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction and acted

knowingly and intentionally, "mere inadequacy in the price or in the subject-matter unaccompanied by other inequitable incidents," is never of itself a sufficient ground for refusing the remedy of specific performance. It is clear, of course, that our statute has made inadequacy of consideration a separate ground for refusing specific performance. (*Morrill* v. *Everson,* 77 Cal. 114, [19 Pac. 190] ; *Cummings* v. *Roeth,* 10 Cal. App. 144, [101 Pac. 434]. See, also, *White* v. *Sage,* 149 Cal. 613, [87 Pac. 193].) Clearly the difference between the true value and the agreed value may be such as, under our statute, to warrant the conclusion that specific performance should be refused on the ground alone of inadequacy of consideration. The question in such cases necessarily is, not whether the price agreed on was the highest price obtainable, but whether such price is a fair and adequate price "under all the circumstances." (*Morrill* v. *Everson,* 77 Cal. 114, [19 Pac. 190].) It is peculiarly a question of fact for the trial court to determine in the light of all the circumstances, and the conclusion of that court upon the question should not be set aside unless it is clear that it has no sufficient support in the evidence. A conclusion that the agreed price was not adequate means that it was not such as to be, under all the circumstances, a "fair, or just or reasonable" price to be paid by the vendee to the vendor, terms expressly embodied by the trial court in the finding in this case. While a mere difference in value of one thousand dollars on property worth only fifteen thousand dollars is perhaps not so large as to warrant a conclusion of inadequacy sufficient to justify a refusal of specific performance, something more was shown in this case. The vendor resided and was in the state of Texas, many hundreds of miles from the property, and was dependent upon those near the property for information as to its condition and value. On the other hand the plaintiffs were on the ground and were well informed regarding the value of orange groves in that vicinity and one of them had been engaged for eight years in buying and selling such orange groves. In their telegram of April 13th to defendant, Gill & Rabbeth advised a sale on the terms then offered, stating that there was much scale in the grove. We cannot say in the light of these facts and the inferences that may be reasonably drawn therefrom, that the finding of the trial court that the consideration was

not, under the circumstances, fair or just or reasonable or adequate as to defendant, is without sufficient support in the evidence. If the finding is sufficiently supported by evidence it follows that the judgment denying specific performance was correct.

Complaint is made that in any event, plaintiffs should have been awarded damages. It was generally alleged that by reason of the failure and neglect to convey on the part of defendant, plaintiffs had been damaged in the sum of two thousand dollars. This was denied and the court found that the plaintiffs had suffered no damage whatever. The measure of damage for breach of an agreement to convey real estate where no bad faith on the part of the vendor is alleged and shown, is prescribed by section 3306 of the Civil Code to be "the price paid, and expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon." There was no evidence whatever to show any such expenditure by plaintiffs, no showing that would have sustained a conclusion of damage, in view of the provisions of section 3306 of the Civil Code.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Sloss J., concurred.

Hearing in Bank denied.