[S. F. No. 4041.  In Bank.—December 10, 1907.]

## GEORGE E. RILEY et al., Appellants, v. NORTH STAR MINING COMPANY, Respondent.

QUARTZ MINING CLAIM—CONVEYANCE OF PART—DESCRIPTION BY SUR-
FACE LINES—EXTRALATERAL DIP OF OUTLYING VEINS.—Where the
patentee of an entire quartz mining claim conveys without reserva-
tion a part of the claim described by surface lines, together with
all mining right, property, possession, claim, and demand whatso-
ever of the grantor in or to the premises, the conveyance carries all
the land below the surface of the earth within vertical planes con-
forming to the surface side-lines, including the extralateral dip of
all veins having their apexes within the lines of the part of the
claim that was not conveyed.

ID.—DEED—CERTAINTY OF DESCRIPTION—CONSTRUCTION.—Where a deed
is certain and unambiguous it must prevail as to the property con-
veyed over an inconsistent contract in pursuance of which it was
given.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco.  Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Crittenden Thornton, and J. F. Riley, for Appellants.

Lindley & Eickhoff, and Curtis H. Lindley, for Respondent.

THE COURT.—After a reconsideration of this case in
Bank we are satisfied with the conclusion reached and the
opinion delivered in Department (*infra,* p. 550), and for the
reasons given in said opinion, the judgment appealed from
is reversed and the cause remanded for further proceedings,
as directed in said opinion.

BEATTY, C. J., dissenting.—I dissent.  The construction
given to the conveyance under which the appellants claim
can be upheld only by disregarding the radical difference
between the relation of a mining claim to its surface descrip-
tion and that which is included in the surface description of
other lands.  As to lands generally a conveyance includes
everything above and below the surface of the earth within

vertical planes conforming to the surface lines, but this is not true of mining claims. The patent from the United States does not transfer to the patentee everything within the vertical planes extended downwardly through his end- and side-lines, and it does transfer things outside of such planes, viz., all parts of veins having their apexes within his surface lines, though in their descent they are carried by their dip beyond the planes of his side-lines.

This is the effect of a patent for the entire claim, and when the patentee conveys a part of that claim described by surface lines the necessary implication is that he reserves all that is embraced within the lines of that portion of the surface claim not conveyed, including the extralateral dip of all veins having their apexes within the lines of the part so reserved. To give a deed for a part of a mining claim any other construction is to defeat the intention of the parties ninety-nine times in a hundred, and the circumstances under which the deed in question here was given afford ample proof that in this case a construction is given to the deed which neither grantor nor grantee intended.

The following is the opinion of Department Two above referred to, rendered on the 22d of November, 1906:—

McFARLAND, J.—This action was brought by plaintiffs as owners of certain mining ground and premises to recover judgment against defendant for the value of gold-bearing quartz rock alleged to have been wrongfully taken by defendant from said premises. By its answer defendant denied that it had wrongfully taken any rock from said premises; admitted that it had taken rock, which it avers was of no value, from beneath the surface of plaintiffs' mining ground; but avers that the rock so taken was from a lode or vein of quartz, the apex of which was within the surface ground of the adjoining mining claim of defendant, and which in its downward course dipped laterally under plaintiffs' ground, and that defendant had the right to follow said vein under the surface of plaintiffs' ground and extract rock therefrom. The case was submitted upon a stipulated statement of facts. The court held that upon the agreed facts the defendant had the right to do the acts complained of, because the rock taken was from a

lode under the surface of plaintiffs' ground which had its apex in an adjoining mining claim of defendant and dipped laterally under plaintiffs' ground. Upon this theory objections were sustained to evidence offered by plaintiffs to show the value of the rock taken by defendant. A nonsuit was granted, and judgment rendered for defendant. From this judgment the plaintiffs appeal.

The stipulated facts material to the determination of this appeal are those hereinafter stated. On April 12, 1876, the government of the United States issued its patent to James K. Byrne for what was known and designated in the patent as the "Massachusetts Hill Quartz Mine," situated in Grass Valley mining district, Nevada County, California. The patent describes certain surface ground containing about fifty acres as designated in the official survey, which accompanied the application for the patent of said mine; also "twenty-one hundred and thirty-eight and four-tenths (2138 4-10) linear feet of the said Massachusetts Hill Quartz Mine, vein, lode, ledge, or deposit for the length hereinbefore described throughout its entire depth, although it may enter the land adjoining"; and also any other veins, etc., throughout their entire depth, the tops or apexes of which lie within the exterior lines of the said survey within the end-lines. The Massachusetts Hill Quartz Mine was a consolidation of several smaller claims which had been located before Congress had passed any statute concerning mining claims or patents. One of the consolidated claims was known as the "Ford and Reilly" and another the "Stockbridge."

On September 23, 1878, James K. Byrne, as party of the first part, conveyed by deed to James P. Pollard and others a part of the said Massachusetts Hill Quartz Mine. The descriptive words of the property conveyed are as follows: "All and singular that certain portion of the Massachusetts Hill mine and mining claim conveyed by the government of the United States to the said party of the first part by the patent, dated April 12, 1876, and as shown by the survey and plat thereof contained and set out in said patent, which is contained and included within the following lines and boundaries and which is described as follows to wit: All that portion of said Massachusetts mining claim which lies east of the west bank of Wolf Creek and west of the east line of said survey,

being all that portion of said ground and mining claim embraced within said patent, and the survey upon which the same is founded, which lies outside of, or easterly from that part of said Massachusetts Hill mine, known as the 'Ford and Reilly location,' as the same was located and claimed as 'square claims' . . . it being distinctly understood that this conveyance embraces only that portion of the said Massachusetts Hill mine, as surveyed, applied for and included in said patent, which was included in the 'Ford and Reilly' survey outside of and easterly from the actual lines and boundaries of the 'Ford and Reilly' square location, and shall not be so construed as to include any portion of the said Massachusetts Hill mine, so patented, which was heretofore known as the 'Stockbridge location.' . . . Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, also all the estate, right, title, interest, mining right, property, possession, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, or in or to the said premises, and every part and parcel thereof, with the appurtenances.'' The land conveyed was a small strip, less than an acre. The words "mining right" were not part of the printed form of deed used, but were written there by the grantor Byrne. Plaintiff afterwards became the successor in interest of said Pollard and others to the property conveyed by said deed, and defendant became the successor of Byrne in all of the Massachusetts mine not conveyed by said deed; and while the ownership of the two pieces of property was thus respectively in said parties, the defendant, through underground works, followed the Massachusetts Hill mine vein under the surface of the ground described in the said deed from Byrne and took rock therefrom under the surface of the ground; and for the rock so taken this action is brought. Defendant contends that it had the right to work the Massachusetts Hill vein where it lay beneath the surface of the land conveyed by Byrne to Pollard and others; and plaintiff contends that the deed from Byrne conveyed all of the rock beneath the surface of the conveyed land. In our opinion the contention of plaintiffs must be sustained.

A good deal of respondent's brief is devoted to the discussion and elucidation of the principle in mining law and property that the owner of a quartz lode which has its apex in the surface grant has the right to follow and take rock from such lode wherever it goes in its downward course, though it dips and extends beyond his side-lines. This principle must, of course, be accepted as beyond controversy. There is also considerable argument in confutation of appellants' position that the Massachusetts Hill mine is a consolidation of a number of "square" locations, without extralateral rights. We will assume for the purposes of this decision that this contention of appellants is not maintainable, and that, under the United States patent to Byrne, all ordinary extralateral rights attached to the Massachusetts mine, and that the Massachusetts Hill lode had its apex in the surface not conveyed by the deed, and dipped easterly to the east side-line of the Massachusetts surface ground. But, in the first place, it can hardly be said that the question of extralateral rights arises in this case, because there is no question here as to any rights existing outside of the Massachusetts Hill side-lines—all rights involved being within those lines. Respondent seems to assume that the deed to Byrne of a part of the mine created new extralateral rights between the land conveyed and that not conveyed, but assuming this to be so, the question is not what is the mining law as to extralateral rights, but what part of the Massachusetts mine was conveyed by the deed. There is nothing about the ownership of that part of a quartz lode which lies at a considerable distance below the surface and departs from the perpendicular more sacred than the ownership of that part of it which lies near or at the surface; neither is inalienable. Under the patent Byrne owned all the surface of the Massachusetts mine as surveyed, and all the Massachusetts Hill lode which was within the surface between the apex and the east line of the surface ground, and he could have conveyed any part of that property. He could have conveyed the deeper part of the lode without conveying any surface ground; he could have conveyed part of the surface ground, reserving all of the lode which was under it; and if he had simply conveyed surface ground without either mentioning or reserving rights under it, then there might have been a debatable question as to what a mere conveyance of

surface ground conveyed. The conveyance, however, which he did make was different from any above supposed, and the rights of the parties to this action depend entirely upon the meaning and effect of that conveyance.

What, then, did the deed from Byrne to Pollard and others convey? It is to be noticed that there is no reservation on the face of the deed itself of any part of or rights in the property described as conveyed. There passed, therefore, to the grantees all property included in the descriptive language of the conveyance. That language is hereinbefore given in full, and we need only here refer to the most material parts of it. It conveys "All and singular that portion of the *Massachusetts Hill mine and mining claim* conveyed by the government of the United States to said party of the first part by the patent dated April 12th, 1870"; and "all that portion of said Massachusetts mining claim which lies east of the west bank of Wolf Creek and west of the east line of said survey, being all that portion of said ground and *mining claim* embraced within said patent"; and it also contains this passage, "it being distinctly understood that this conveyance embraces only that portion of the said *Massachusetts Hill mine,* as surveyed, *applied for* and included in said patent, which was included in the 'Ford and Reilly' survey outside of," etc., together with all *mining right,* property, possession, claim and demand whatsoever "of the said party of the first part, of in or to the said premises, and every part and parcel thereof."

Now, what was the "Massachusetts Hill mine and mining claim" conveyed by the government of the United States to the said party of the first part by the patent dated April 12, 1876? It included, as described in the patent, "the Massachusetts Hill quartz mine" with certain described surface ground, and 2,138.4 linear feet of the said Massachusetts "mine, vein, lode, ledge, or deposit." Therefore when Byrne conveyed to Pollard and others "all that part of the Massachusetts Hill mining claim which lies east of the west line of Wolf Creek west of the east line of said survey," etc., together with all "the mining right, property, claim and demand of the party of the first part, of in or to the said premises, and every part and parcel thereof, with the appurtenances," he clearly conveyed to the grantees all the property and right of

every kind which he had in that part of the mine lying between the west bank of Wolf Creek and the east line of the surface ground. A part of that portion of mine lying east of the west bank of Wolf Creek was that part of the Massachusetts Hill quartz lode which was within that boundary, and it was conveyed as completely as a deed of the *whole* Massachusetts Hill lode mine would have conveyed all the said mine. There was no language of reservation; and the words employed included every kind of property and right which the grantor had in that part of the mine mentioned. We do not attach quite as much importance to the words "mining right" as is given it by appellants, for the previous language of the deed would have been clearly sufficient to include all the grantor's mining right in the land conveyed without the subsequent express use of those words. However, those words are in entire accord with the previous language, and although not necessary, may be considered as having some significance as "further assurances" of the thing granted, after a conveyance of all that part of the Massachusetts mine lying east of the line mentioned, together with all of the grantor's "mining right" therein, there was surely nothing left to the grantor of that part of said mine. Of course, the previous language in a deed might be such as to limit the subsequent use of the words "mining right"; but there was no language used in the deed here in question suggesting such limitation.

Respondent contends that the deed should be construed in the light of certain facts and a certain preliminary contract between Byrne and the said Pollard. Those facts and that contract were as follows: After Byrne had made his application for a United States patent for the Massachusetts Hill mine said Pollard asserted the ownership of a mining claim called the "Norwich" which conflicted with a part of the Massachusetts claim as surveyed. Thereafter, to avoid the necessity of an adverse suit a written agreement was entered into between Byrne and Pollard, by which Pollard agreed not to file an adverse claim, and Byrne agreed that after he had received a patent for the Massachusetts Hill mine he would convey a certain part thereof to Pollard. Respondent contends that by this contract Byrne was to convey only a part of the surface of the Massachusetts Hill mine, and was not to convey any part of the Massachusetts Hill lode lying under

such surface; and that, therefore, the subsequent deed—whatever its language—is to be construed as not conveying any part of the Massachusetts Hill mine except such surface. But, in the first place, the said contract is by no means certain as to the precise property Byrne was to convey. It clearly contains no reservation of any underground rights. By the contract Byrne agreed to convey to Pollard "that portion of said ground embraced within lateral lines drawn easterly from the northeast corner of the 'Ford and Reilly location' and the northeast corner of the 'Stockbridge location,' respectively; it being distinctly understood that this agreement embraces only that portion of the said *Massachusetts Hill mine* as surveyed and *applied for,* which was included in the 'Ford and Reilly' survey, outside of and easterly from the actual lines and boundaries of the 'Ford and Reilly square location.' " It thus refers to a part of the Massachusetts Hill mine as well as to the surface ground. Moreover, it may have been understood at that time that as the Ford and Reilly was a "square" claim, a conveyance of surface ground included all beneath it. At all events, there was no absolute inconsistency between the contract and the deed which was afterwards executed. Moreover, if there had been any such inconsistency, the deed would prevail. In construing a written instrument it is permissible to consider preceding facts and surrounding circumstances only when the instrument is itself ambiguous and uncertain. Where, as in the case at bar, the language used in the instrument in question is clear and certain, such language must govern. When property is clearly granted by a deed, the title of the grantee cannot be disturbed by extrinsic evidence tending to show that the grantor did not intend to convey such property. Of course, in a proper case and by a proper proceeding, a deed may be reformed or declared void on account of mistake or fraud; but there is no such issue in the case at bar.

Counsel on each side have cited a number of authorities, but we do not deem it necessary to notice them at length, for they are not determinative of the question here involved, and deal with facts different from those of the case at bar. However, the views hereinabove expressed were substantially declared in the case of *Central Eureka Co.* v. *East Central Eureka Co.,* 146 Cal. 156, [79 Pac. 834]. The question there

was whether a conveyance of ground by metes and bounds carried a part of the Summit quartz mining lode which dipped under it; and the court held that it did not. But the court said: "Unquestionably, it would have been conveyed by any instrument purporting to grant the Summit quartz mining claim, or the Summit quartz mining ground, for it was part and parcel thereof."

Our conclusion is that the court below erred in sustaining · objections to evidence offered by appellants to show the value of the rock taken from the mining ground by respondent, and in granting a nonsuit and rendering judgment for respondent. Upon the agreed statement of facts, if the rock taken by respondent from appellants' land was of any pecuniary value as gold-bearing quartz, then appellants were entitled to judgment for such value.

The judgment appealed from is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Henshaw, J., and Lorigan, J., concurred.