[Civ. No. 2306.   Fourth Appellate District.—July 18, 1939.]

BRYAN A. SWEET, Respondent, v. WATSON'S NURSERY
(a Copartnership) et al., Defendants; JESSE LEE WAT-
SON et al., Appellants.

Sloane & Steiner for Appellants.

Fred Kunzel and Renwick Thompson for Respondent.

GRIFFIN, J.—This is an appeal from a judgment in an action for damages for breach of a warranty in the sale of orange trees. The case was previously before us for consideration (*Sweet* v. *Watson's Nursery,* 23 Cal. App. (2d) 379 [73 Pac. (2d) 284]) on an appeal from a judgment in favor of Jesse Lee Watson (Sr.) and Joseph H. Watson, based upon an order granting a nonsuit on the ground that the action was barred by subdivision 1 of section 339 of the Code of Civil Procedure. A *résumé* of the facts surrounding the sale of the trees is adequately set forth in the reported opinion without further recitation here. There is no dispute as to the fact that respondent ordered 1122 Valencia orange trees and that 848 of this number proved to be Navels. After a retrial of the issues involved, a judgment was entered in favor of respondent and against appellants in the sum of $3,217.50, based upon the difference in value of the land as planted to Navel orange trees and its value had the trees planted thereon proved to have been the variety ordered, namely, Valencia.

In determining the element of damage, witnesses testified that the value of the ranch in 1933, if the trees had all been uniform Valencia orange trees, would have been as much as $900 per acre and that the value of the land with the spotted orchard as it was planted, was as low as $300 per acre. The ranch comprised 11.7 acres. The evidence of damage sufficiently supports the judgment, considering for that purpose the value arising from the Valencia trees which were delivered according to the warranty, and excluding from consideration the value arising from the 40 trees for which a recovery was barred by subdivision 1, section 339, of the Code of Civil Procedure, as reported in the previous decision above mentioned, which we presume the court fully recognized in determining the element of damage. (*Harper* v. *Buckles,* 19 Cal. App. (2d) 481 [65 Pac. (2d) 947]; *Burge* v. *Albany Nurseries, Inc.,* 176 Cal. 313, 318 [168 Pac. 343].)

The remaining point involved pertains to the liability of these particular appellants. Originally the action was filed naming as defendants Jesse Lee Watson (Jr.), Jesse Lee Watson (Sr.), appellant herein, Joseph Walter Watson, and Joseph H. Watson, appellant herein. Judgment of nonsuit was granted at the former trial as to defendants Jesse Lee Watson

(Jr.) and Joseph Walter Watson. No appeal was taken from this order as to these named defendants.

The facts seem to be that for a good many years the two appellants had been together engaged in citrus growing in various parts of the state; that they had originally conducted their business as partners and about 1927 had incorporated, they being the only substantial stockholders in the corporation; that this corporation continued in existence and continued for the most part to handle their affairs until some time in 1937, when appellants dissolved it and resumed the earlier method of conducting their business. The particular ranch in Vista where the two other defendants were operating, seems to have been purchased by the corporation, but not in the corporation's name. Apparently the funds from their general corporate business were used in its acquisition and it seems that Joseph H. Watson designed, so far as his share in the purchase of this particular property was concerned, to use it for the purpose of getting his son, Joseph Walter Watson, started in business, so that apparently with that purpose and intent in mind, the title was taken as to a one-half interest, in Jesse Lee Watson (Sr.), and as to the other one-half interest, in Joseph Walter Watson, although the actual funds that went into the property were those which, through the corporation, accrued to Jesse Lee Watson (Sr.) and Joseph H. Watson respectively, in equal shares and of which Joseph H. Watson gave his son, Joseph Walter Watson, the benefits, so far as the vesting of the record title to the property was concerned. The matter ran on in this shape for a number of years after the title had been acquired. Joseph Walter Watson operated the premises as well as other premises in San Diego County, and conducted a vegetable business on them. He was, apparently, advanced rather considerable sums of money by the corporation in which his uncle and father were interested, as already recited. The conduct of the business, however, by Joseph Walter Watson, was not successful and he became involved in financial difficulties. In October, 1930, he quitclaimed the Vista ranch to his uncle, Jesse Lee Watson (Sr.), without any reservation of growing crops or nursery stock. On May 21, 1931, a date subsequent to the purchase of the nursery stock by respondent Sweet, Jesse Lee Watson (Sr.) turned over that interest in the land quitclaimed to him by Joseph Walter Watson to Joseph H. Wat-

son, thus bringing the title to the land into the two appellants, two brothers, in undivided interests. Joseph Walter Watson apparently, after the quitclaim deed had been made by him in the fall of 1930, continued to manage the premises until January of 1931, when Jesse Lee Watson (Sr.) who it seems was the more active one of the brothers in the management of the affairs generally, sent down to San Diego County Jesse Lee Watson (Jr.), his nephew, who is the other son of Joseph H. Watson, to take charge of the operation of the ranch. Jesse Lee Watson (Jr.) was thereafter paid a salary which seems to have come out of the corporate funds. The nursery stock had all been placed on the Vista ranch during the time that Joseph Walter Watson was actually operating the ranch and during the time that he held in his name the legal title to a one-half interest in it.

It is claimed by appellants, however, that as to the particular row of nursery stock from which the respondent acquired the specific trees complained of, Joseph Walter Watson had retained the title to the stock, notwithstanding his quitclaim of the land. It is claimed that as to certain other rows this was not the case, for it was contended that part of row A of the nursery stock belonged to the two appellants.

According to the respondent's testimony, his purchase of the nursery stock complained of was made chiefly through Jesse Lee Watson (Jr.), although there was more or less conference with Joseph Walter Watson in connection with it. His account is that Jesse Lee Watson (Jr.) insisted on taking time to refer to his uncle and his father (appellants herein) the proposed terms of purchase, which were not entirely for cash, but included the turning over of a note. Respondent testified that these arrangements, according to what Jesse Lee Watson (Jr.) said to him, had to be taken up between Jesse Lee Watson (Jr.) and his uncle and his father (appellants herein) before he could close the transaction, and that time was allowed for this purpose. The defense substantially is that the appellants had no actual connection with the situation at all; that the nursery stock was the property of Joseph Walter Watson and sold by him, and that if there was any remedy, the remedy was against him.

The trial court found that the appellants were the owners of and had title to the nursery stock sold to the respondent. The record title to the real estate on which the nursery stock

was growing stood, on the date of the sale to respondent, in the name of the appellant Jesse Lee Watson (Sr.). The appellant Joseph H. Watson, apparently, had an interest in the real estate on which the nursery stock was growing at the time of the sale to the respondent. Part of the nursery stock sold to the respondent admittedly belonged to appellants. A Mr. Shaver, who purchased trees from the Watson ranch in Vista prior to the sale to respondent herein, dealt with the appellant Joseph H. Watson of Downey, California, in seeking a settlement of a similar claim for a breach of warranty.

The consideration paid by respondent for the nursery stock was paid to and received by appellants herein. The evidence shows that the appellants paid for the labor, for the care of the nursery stock sold to respondent, and also for the balling and delivery of the nursery stock to respondent Sweet.

The trial court found that Jesse Lee Watson (Jr.), of Vista, was the agent of the appellants and acted at all times within the scope of his authority, and such finding is supported by the evidence. The trial court further found that J. H. and J. L. Watson, Inc., a corporation, was the *alter ego* of the appellants, and such finding is also supported by the evidence. The appellants, as partners, were the only two stockholders, in fact, in the corporation. The stockholders or directors of the corporation held no meetings for approximately four years from November 24, 1928, to July 20, 1932. All personal business of the appellants was transacted through the bank account of the corporation. The book of account introduced by appellants showed that from March, 1931, to June, 1932, the appellants designated themselves as partners.

■ The rule is clear that where a corporation is merely the business conduit of an individual or partners, the courts will look through the corporation to the individual. (*Wenban Estate, Inc.,* v. *Hewlett,* 193 Cal. 675, 695 [227 Pac. 723]; *Continental Securities etc. Co.* v. *Rawson,* 208 Cal. 228, 238 [280 Pac. 954].) When a corporation is organized or perpetuated for the particular purpose of carrying out the plans of partners or associates in business, the same rule has been held to apply, and whether the corporation be deemed a ''one-man'' corporation, or as here claimed, a ''two-man'' corporation, the rule is the same. (*D. N. & E. Walter & Co.* v. *Zuckerman,* 214 Cal. 418, at 420 [6 Pac. (2d) 251, 79 A. L. R. 329]; *Wise Realty Co.* v. *Stewart,* 169 Cal. 176 [146 Pac. 534].)

■ It is well settled that agency may be established by circumstantial evidence. (*Bergtholdt* v. *Porter Bros. Co.*, 114 Cal. 681, 688 [46 Pac. 738].)

■ Appellants base their defense mainly upon the ground that although Joseph Walter Watson conveyed the realty on which the nursery stock was growing to the appellants, that by some oral reservation he, Joseph Walter Watson, continued to have the title to the nursery stock on the "C" line in the orchard, from which line he claims he sold the trees to respondent. It is a general rule that in order for a vendor to reserve the growing crops when the realty is conveyed, there must be a written reservation, and in the absence of such a written reservation, the growing crops pass with the realty. (*Wilson* v. *White*, 161 Cal. 453, 460 [119 Pac. 895].) ■ The findings of the trial court that the appellants were in fact the owners of the nursery stock, that the nursery stock was sold by their agent, and that their agent acted within the scope of his authority, being supported by the evidence, are not subject to attack merely because there is evidence in the record which is conflicting with the evidence supporting the findings. (*Carter* v. *Carr*, 139 Cal. App. 15 [33 Pac. (2d) 852]; *Paff* v. *Ottinger*, 32 Cal. App. 439, 441 [163 Pac. 230]; *Hope Min. Co.* v. *Burger*, 37 Cal. App. 239, 244 [174 Pac. 932]; *Interstate Grocery Co.* v. *George William Bentley Co.*, 214 Mass. 227 [101 N. E. 147].) We are of the opinion that the findings of the trial court are sufficiently supported by the evidence.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.