[Civ. No. 4123.   Fourth Dist.   Feb. 4, 1950.]

ORIE P. SMITH et al., Respondents, v. WALTER L. BAKER et al., Appellants.

Courtney Lacey and Mart Coles for Appellants.

Gerald A. Coxe for Respondents.

GRIFFIN, J.—Plaintiffs brought this action against defendants entitled ''Complaint in Ejectment and for Injunction and Damages.'' Defendants and appellants owned a ranch near San Jacinto. In December, 1947, they planted a crop of lettuce on 15 acres of said ranch property. On December 22, 1947, they entered into an agreement with a produce concern which was to harvest the lettuce and sell it when it was ready for cutting. The ranch was listed for sale. On February 2, 1948, a real estate broker secured from plaintiff Orie P. Smith a written agreement to purchase the ranch property then owned by the defendants for the sum of $18,500. The agreement provides for the sale of the entire property ''except lettuce crop to go to owner consisting of (15 acres).'' On February 6, 1948, plaintiffs and defendants entered into an escrow agreement. This agreement, among other things, provided that ''The seller is allowed to retain possession of the property until 4-30-48 and retain their interest in the crop now on the property, being a crop of lettuce.'' At the same time the defendants signed the escrow agreement they also signed a deed to the property dated February 6, 1948, and left it with the escrow clerk to be recorded in due course and delivered to plaintiffs. It was recorded on March 25, 1948, and made no mention of the reservation of the lettuce crop. Defendants were in possession of the entire property under the agreement and shortly before April 30, 1948, they discovered that they were unable to harvest and remove their lettuce crop by that date because of the fact that the crop had not matured. A few days before April 30, defendants moved out of the house located on the premises and on April 29 gave written notice to plaintiffs that they intended to remove the crop of lettuce then growing upon the property and notified them that they should refrain from in any way interfering with or attempting to handle the said crop. About May 12, the produce concern started harvesting the crop and completed it about May 21. On May 3, plaintiffs filed this action praying for the immediate possession of all of the premises, growing crops and personal property situated thereon, for damages for unlawful withholding and use of the premises from April 30 to the date of placing plaintiffs into peaceable possession, and asking that the court

determine the ownership of the crop of lettuce then growing on the premises and damages for removal of the same in the event that the ownership be ultimately determined to be in the plaintiffs. A temporary restraining order was sought and obtained, restraining defendants from removing any portion of the lettuce crop for any purpose and from trespassing upon the property. After issuance of the restraining order the respective counsel entered into a stipulation agreeing that defendants may go upon the land described and remove the lettuce crop then growing on the land; that they may use water, pumps and conduits then located on the real property for making necessary and proper irrigation of the lettuce crop, and agreeing that the purpose of the stipulation was to conserve and protect the interests of all parties concerned; that the produce concern may harvest the crop and deliver the proceeds to the court pending the determination of the action. The sum of $4,037.55 was thus deposited.

The only question here involved is as to which party is entitled to the proceeds of the sale of the lettuce crop.

The trial court took evidence surrounding the entire transaction and found generally that defendants vacated and turned over to plaintiffs a portion of the premises on April 28, 1948; that the escrow agreement provided that the sellers were to retain possession until April 30, for the purpose of harvesting a certain crop of lettuce growing on the land; and then specifially found "that the parties understood and agreed that in the event that the sellers did not for any reason succeed in harvesting said crop of lettuce on or before the said 30 day of April, 1948, that the same would then automatically under the terms and conditions of said agreement, become the property of, and that title to said crop of lettuce would pass to the purchasers of the realty, the plaintiffs herein"; that the defendants did not harvest the crop on or before the agreed date; that about March 25, 1948, defendants accepted from the plaintiffs the full amount of the purchase price and delivered their unrestricted deed to the realty to the plaintiffs; that by reason of defendants' "holding over" after April 30 and until May 21, of a portion of the property plaintiffs were thereby prevented from planting a new crop in season; that defendants, in vacating a portion of the premises, took and removed certain scrap iron and various articles

of personal property amounting to approximately $165; that defendants did not notify plaintiffs that the lettuce crop had been previously sold by defendants until about April 29; that the defendants, by their own agreement, had no right, title or interest in the crop of lettuce after the 30th of April, 1948, and that plaintiffs were entitled to the proceeds thereof; that such award of proceeds from the sale of the crop of lettuce was adequate compensation and that therefore plaintiffs were not entitled to damages against the defendants resulting from their "holding over" and retention of the premises after April 29. Judgment was entered accordingly. Defendants appeal, and claim that the court erred in thus construing the provisions of the escrow agreement and the evidence surrounding the entire transaction.

The trial court, without objection, proceeded to hear evidence bearing on the interpretation of the provisions of the escrow agreement regarding the retention of the lettuce crop and forfeiture of it, apparently, on the theory that the agreement was uncertain and ambiguous.

The evidence on this question was as follows: The real estate broker testified generally that the agreement was that the escrow would be closed as soon as all of the money was deposited; that plaintiffs were not able to be there at the opening of the escrow but the agreement was drawn up by the escrow clerk and they all thought and decided that defendants should have possession of the entire property until April 30, and that the lettuce crop would be harvested by that time. He was asked if anything was said about the crop belonging to the buyer if defendants "didn't get it off" by that time. He answered "No." He then testified that the escrow agent thought she could have the escrow completed within 30 days but she suggested that she be allowed 40 days within which to close the escrow; that before entering into the agreement he told defendants that the lettuce crop was reserved to them.

The escrow agent testified that when writing up the escrow instructions, Mr. Baker stated that he was selling his property; that he had no place to move and wanted to remain on the property until April 30 and that he wished to keep the lettuce crop; that he hoped to have it off by April 30; that she never told the Bakers that if they did not have the crop off by April 30 it would belong to the buyer; that the Smiths later signed the agreement but not in her presence. She

then stated that shortly before April 30, Mrs. Baker came to her, worried about the lettuce crop and said that due to weather conditions it did not mature as early as they expected and that the plaintiffs expressed their intention to declare the lettuce crop forfeited to them; that Mrs. Baker asked her advice and she told her to see the plaintiffs and see if they could not adjust the matter some way; that she further advised her that she should move out of the house and give possession of it to the plaintiffs according to the agreement.

Defendant Walter L. Baker and his wife testified generally that it was their understanding that they were to keep the lettuce crop and that it was "reserved" to them and was to be harvested as soon as it could be; that no one could tell when it would ripen; that the limitation placed in the escrow agreement only involved the time when they were to move out of the house; that the date was proposed by the escrow clerk; that defendant and his family worked hard in irrigating and weeding the lettuce crop; that he had never planted lettuce before and knew nothing about the time it would or should take to ripen.

The testimony of plaintiff Orie P. Smith is that it was his understanding that he was to have possession of all of the property, including the lettuce crop, by April 30; that he discussed this fact with the escrow agent who told him that April 30 was the "dead line" and that after that he was to have possession of everything; that he discussed it with defendants and that defendants told him they had had hard luck in getting the lettuce crop to mature; that he told them he could not be expected to "carry their hard luck" and if he did not get his land he "would have to have something for it"; that he could not put in his crop of watermelons in time for them to mature so he "should have the lettuce which they agreed to"; that defendants offered to pay him as high as $200 damages for holding over after the 30th; that he estimated his loss of profits on the watermelon crop to be $6,200; and that he would not have purchased the property if he had known he was not going to have the use of the full acreage by April 30; that it was his understanding, at the time of the escrow, that if the crop was not off of the land by that time it would belong to him as a "penalty" for "them hanging over."

In support of the court's findings plaintiffs rely upon this testimony as well as the holding in *Sweet* v. *Watson's*

*Nursery,* 33 Cal.App.2d 699 [92 P.2d 812], to the effect that to reserve growing crops to a vendor when realty is conveyed, there must be a written reservation, and in the absence of such a written reservation a growing crop' passes with the realty. It is further claimed that the execution of the deed without any reservation in it merges all prior negotiations and agreements relating thereto, citing such cases as *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945]; *Riley* v. *North Star Mining Co.,* 152 Cal. 549 [93 P. 194]; *Huerstal* v. *Muir,* 64 Cal. 450 [2 P. 33]; and 8 Cal.Jur. § 8, p. 691.

*Sweet* v. *Watson's Nursery, supra,* is not applicable, because in the instant action there is a written reservation of crops growing on the deeded land. Such written reservation, as between the parties, is not required to be in the deed itself. (*Densmore* v. *Chainey,* 7 Cal.App.2d 109 [45 P.2d 406]; *Chainey* v. *Shostrom,* 119 Cal.App. 237 [6 P.2d 353]; *Campbell* v. *Miller,* 205 Cal. 22, 25 [269 P. 536]; *Tuso* v. *Green,* 194 Cal. 574, 581 [229 P. 327]; and *Quality Bldg. & Sec. Co.* v. *Bledsoe,* 125 Cal.App. 493, 500 [14 P.2d 128].)

There is no doubt that the right to the use and occupation of the entire premises by defendants was given by plaintiffs under the escrow agreement, at least until April 30, and that the right to harvest the lettuce crop, up to that date, remained in defendants. The lettuce crop, by the agreement, had been severed from the realty, and title thereto was reserved in defendants unless forfeited by the terms of the agreement. Under section 658 of the Civil Code, for the purpose of sale, industrial growing crops, which are agreed to be severed before sale, shall be treated as goods and be governed by the provisions of the title of the Civil Code regulating the sale of goods. (See, also, Civ. Code, § 660.) ▮ Since growing crops are subject to absolute sale, it would follow that they are subject to reservation upon the sale of the land. (*Sears* v. *Ackerman,* 138 Cal. 583 [72 P. 171]; *Vulicevich* v. *Skinner,* 77 Cal. 239 [19 P. 424]; *Jones* v. *California Growers & Shippers,* 182 Cal. 777 [190 P. 172].)

▮ The finding that the plaintiffs were entitled to the lettuce crop could be supported only upon the theory that title thereto in defendants had been forfeited to plaintiffs by reason of some breach of a written agreement. The escrow agreement between the parties makes no provision for forfeiture of title to the lettuce crop to plaintiffs by reason of defendants' failure to harvest it before April 30 or, in fact, after April 30. By its terms it only provides that

after April 30 plaintiffs shall be entitled to the possession of the premises.

The evidence clearly indicates that a forfeiture of the lettuce crop, for failure to harvest and remove it from the premises prior to April 30, was not intended by defendants or by the parties responsible for the authorship of the agreement. The terms of the agreement itself are equally convincing.

In construing the evidence presented in connection with the written agreement, we are at once met with the code provision which provides that: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (Civ. Code, § 1442.)

In *McNeece* v. *Wood,* 204 Cal. 280 [267 P. 877], the court, in construing that section, states at page 283-284:

"Examination of the cases in this state shows that our courts have not hesitated to give this rule of interpretation full application. 'Forfeitures, as such, are not favored by the courts, and are never enforced if they are couched in ambiguous terms.'. . . 'A forfeiture can be enforced only when there is such a breach shown as it was the clear and manifest intention of the parties to provide for' . . . 'The burden is upon the party claiming the forfeiture to show that such was the unmistakable intention of the instrument. If the agreement can be reasonably interpreted so as to avoid the forfeiture, it is our duty to do so.' " (Citing cases.)

To the same effect is *Brant* v. *Bigler,* 92 Cal.App.2d 730 [208 P.2d 47], where it is said quoting from *Ballard* v. *MacCallum,* 15 Cal.2d 439, 441 [101 P.2d 692]:

" 'We have two possible constructions, one of which leads to a forfeiture and the other avoids it. In such a case the policy and rule are settled, both in the interpretation of ordinary contracts and instruments transferring property, that the construction which avoids forfeiture must be made if it is at all possible.' " (Citing cases.)

In *Blaeholder* v. *Guthrie,* 17 Cal.App. 297 [119 P. 524], it was held that a contract should not be so interpreted that the tiller of the soil and the person who raises the crop, *while in possession of the property,* should lose the benefit of his labor.

We must therefore conclude that the burden of establishing, by convincing evidence, that a forfeiture was thus intended by the parties, has not been met by plaintiffs. The

clause of the escrow agreement provides that the right to the possession of the *property,* whatever that word was intended to cover, terminated on April 30. The only property described in the escrow was Lots 13 and 14 and the south half of Lot 11. Under the deed and the agreement this was the subject matter under discussion and the only reasonable conclusion would be that this was the property, possession of which was to terminate on April 30 under the clause mentioned. It should be here noted that at all times, defendants were claiming possession and right of possession of the 15 acres for the purpose of irrigating, cultivating, and harvesting the crop thereon up until the actual time it was harvested. The complaint alleges that defendants "surrendered and delivered to plaintiffs herein only a portion of the premises purchased" and that on April 30 defendants notified plaintiffs that they intended to "*retain possession* of a portion of said premises . . . . on which is situated a growing crop of lettuce . . ." The trial court found that defendants constructively retained a portion of the land in their possession until May 21, 1948. If plaintiffs were entitled to possession of the real property described in the escrow, they might be entitled to maintain their action in ejectment to recover possession thereof and also obtain *damages,* if any, under the proper measure, for its retention for the three weeks after April 30. This form of relief is indicated by the title of the complaint here filed. (*Grossman* v. *Yip Wing,* 62 Cal.App. 121 [216 P. 634]; *Page* v. *Fowler,* 39 Cal. 412 [2 Am.Rep. 462]; *Johnston* v. *Fish,* 105 Cal. 420 [38 P. 979, 45 Am.St.Rep. 53]; *Ebbert* v. *Mercantile Trust Co.* 213 Cal. 496 [2 P.2d 776].)

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 30, 1950.