[Civ. No. 6875.   Fourth Dist.   Nov. 7, 1962.]

DAVID A. PELLISSIER, Plaintiff and Appellant, v. ROY HUNTER et al., Defendants and Respondents.

Jess G. Sutliff and Harry R. Roberts for Plaintiff and Appellant.

Verne Summers for Defendants and Respondents.

GRIFFIN, P. J.—This is an appeal by plaintiff, cross-defendant and appellant David A. Pellissier (hereinafter referred to as plaintiff) from a judgment in favor of defendants, cross-complainants and respondents Roy and Juanita Hunter (hereinafter referred to as defendants). The defendants have not appealed from the judgment in favor of the plaintiff and against the defendants upon the counter-claim and cross-complaint filed by defendants.

This action arises out of a sale of plaintiff's ranch to defendants in 1959. The defendants paid the plaintiffs $70,000 for this ranch and certain equipment. Thereafter, plaintiff filed an action seeking to recover $2,240 on account of 80 tons of baled hay valued at $28 per ton. Defendants' answer alleged that this hay was included in the price of the ranch and the payment of the $70,000 also included a payment for the hay. In their counter-claim, defendants claimed that plaintiff had not delivered a certain hay baler, valued at $3,600, and that plaintiff had agreed to deliver this equipment to defendants as a part of the equipment included in the sale. The trial court found for the plaintiff on the counter-claim and cross-com-

plaint. It also found that the hay was part of the property which plaintiff agreed to sell to defendants along with the ranch, and found for the defendants on the complaint.

During 1957 and 1958, plaintiff had harvested five crops of alfalfa from the ranch. In August 1959, plaintiff commenced the fourth harvest of hay, which was finished early in September 1959. In July 1959, plaintiff and defendants first discussed the sale of the ranch to defendants. The sale was placed in escrow on November 12, 1959 and escrow closed on December 4, 1959. Defendants testified that the last cutting of alfalfa was included in the sale and that defendants agreed to pay plaintiff his costs in connection with irrigating the last cutting of hay. Defendants also testified that on January 5, 1960 and February 1, 1960, they sent plaintiff checks totaling $502.70 in payment of plaintiff's irrigating costs and power bills. The 80 tons of hay were left on the ranch when defendants took possession. On December 9, 1959, five days after the close of the escrow, a banker loaned defendants money, and the 80 tons of hay became part of the security for the loan. Before making the loan, the banker talked to the plaintiff. The banker testified that he did not remember the gist of this conversation, but said that he was of the opinion that defendants owned the hay at the time he made the loan. Plaintiff did not move off the ranch until January 5, 1960.

Plaintiff contends (1) that the trial court violated the parol evidence rule when it permitted the defendants to testify that the 80 tons of hay were included in the purchase price of the ranch; that the effect of this testimony was to modify the clear and unambiguous terms of the escrow instructions, deed and bill of sale, none of which instruments referred to or mentioned any hay whatsoever; and (2) that when a crop is severed from the soil or harvested, it ceases to be realty and becomes personal property.

It is defendants' contention that this was a collateral oral agreement such as falls within the exceptions to the parol evidence rule under the provisions of Restatement of Contracts, section 240, which provides that a collateral agreement may sometimes be proven where it is not inconsistent with the terms of the written agreement, even though it relates to the same subject matter and where the oral agreement is such as might naturally be made the subject of a separate agreement by the parties.

Defendants contend that the hay was harvested during the period the parties were negotiating the sale and they could not have known the exact status of the hay at the time of the

close of escrow; that therefore this was a type of situation where the parties might naturally enter into a collateral verbal agreement; that the hay was a consumable item and therefore would not have been included within the list of objects used as security for the chattel mortgage which plaintiff was given as security for the unpaid portion of the purchase price, and that this is why the hay was not listed with the other items of personalty described in the escrow instructions.

The trial court specifically found that it was not true that defendants became indebted to plaintiff in the sum of $2,240 on account of 80 tons of hay sold and delivered to defendants, and that the 80 tons of hay in question were delivered to and used by defendants. Apparently the court believed defendants' testimony that the fourth crop was to be retained by defendants and was included in the consideration for the sale of the ranch property. There is some evidence that a part of that consideration was the payment by defendants of $552.70 for power bill and irrigation costs made in the form of two checks received in evidence. The 80 tons of hay were left on the ranch when plaintiff left it, indicating that possession was delivered to defendants. The stock of hay was fenced by defendants while plaintiff was still living on the premises. Defendants did this to prevent cattle they had turned in on the unharvested alfalfa crop from eating it. This was done without objection on the part of plaintiff and apparently with his consent.

As corroboration, the trial court laid stress on the testimony of the banker and defendants that the banker did call plaintiff about the hay when defendants listed it as part of the security for obtaining a bank loan after the sale of the ranch, and no protest was made by plaintiff. It was defendants' story that plaintiff agreed to turn over to defendants the 80 tons of hay harvested while negotiations were pending as part of the consideration if defendants would pay the power bill and irrigation costs which included the personal services of the plaintiff, and that if the sale was not effected defendants would pay $28 per ton for it. There is sufficient evidence to support this finding. The only question is whether this testimony was admissible, over strenuous objections, to show this transaction, in view of the escrow instructions, bill of sale and deed which made no mention of it.

Civil Code, section 1723, recites: Subject to the provisions of this act and of any statute in that behalf, a contract to sell or a sale may be made in writing (either with or without seal), or

by word of mouth, or partly in writing and partly by word of mouth, or may be inferred from the conduct of the parties.''

Civil Code, section 658, describes real property as:

1. Land;

''    .    .    .    .    .    .    .    .    .    .    .    .

''4. That which is immovable by law; except that for the purposes of sale . . . industrial growing crops . . . which are agreed to be severed before sale or under the contract of sale, shall be treated as goods and be governed by the provisions of the title of this code regulating the sales of goods.''

Civil Code, section 660, states that a thing affixed to land is a fixture, under certain conditions and exceptions noted; that for the purpose of sale, growing crops attached to the land, which are agreed to be severed before sale, shall be treated as goods and be governed by the law regulating sales of goods.

It appears to be the rule that when crops of either species, *fructus industriales* or *fructus naturales,* are actually severed from the land by their proprietor, they become personal property (15 Am.Jur. § 6, p. 199), and as between vendor and purchaser of real property upon which there is growing at .the time of transfer an unsevered crop, the crop constitutes a part of the realty and passes to the grantee by the conveyance of the land, unless the ownership of the growing crop is specially reserved in writing. (*Fiske* v. *Soule,* 87 Cal. 313 [25 P. 430]; *Wilson* v. *White,* 161 Cal. 453 [119 P. 895]; *Sweet* v. *Watson's Nursery,* 33 Cal.App.2d 699 [92 P.2d 812]; *Smith* v. *Baker,* 95 Cal.App.2d 877 [214 P.2d 94]; 14 Cal.Jur.2d § 8, p. 568; 8 A.L.R.2d 565.)

Evidence of earlier conversations is admissible on the theory that there was a collateral oral agreement between the parties pertaining to the hay which was not inconsistent with the terms of the escrow instructions, deed and bill of sale given in pursuance thereof, *i.e.,* a prior or contemporaneous collateral oral agreement may sometimes be shown where it is not inconsistent with the terms of the written agreement, even though it relates to the same subject matter. (*Cotton* v. *Riverside Cement Co.,* 29 Cal.App.2d 588 [85 P.2d 136]; *Lindsay* v. *Mack,* 5 Cal.App.2d 491, 496 [43 P.2d 350]; *American Industrial Sales Corp.* v. *Airscope, Inc.,* 44 Cal.2d 393, 397 [282 P.2d 504, 49 A.L.R.2d 1344].)

The determinative question is whether the writing was intended to cover a certain subject of negotiations, for,

if not, then the writing does not embody the transaction on that subject. (*Simmons* v. *California Institute of Technology*, 34 Cal.2d 264, 274 [209 P.2d 581], quoting 9 Wigmore on Evidence, sec. 2430, p. 97; *Crumley* v. *Walter M. Ballard Corp.*, 100 Cal.App.2d 698, 703 [224 P.2d 455].)

█ █ Restatement of Contracts, section 240, sets forth two qualifications of this exception: (1) the collateral agreement must have a separate consideration, or (2) it must be such as might naturally be made as a separate agreement by the parties so situated. (3 Corbin on Contracts, § 584; Rest., Contracts, § 240, subd. (1); *Greathouse* v. *Daleno*, 57 Cal. App. 187 [206 P. 1019]; *Sivers* v. *Sivers*, 97 Cal. 518 [32 P. 571].)

Here, the alleged agreement that the growing crop, even though cut after the transaction was first instituted and orally agreed upon, would inure to the benefit of the purchasers, and if the transaction failed defendants would pay plaintiff $28 per ton for the 80 tons, was such an agreement as might be reasonably made as a separate agreement by the parties. Furthermore, it would have been contemplated that the hay was to be consumed by defendants' livestock and therefore would not be a proper subject to be used as security for the chattel mortgage defendants were using as security for the unpaid portion of the purchase price. █ The question of a possible separate consideration would be a closer question. Had the sale been completed while there was this growing crop, it would have passed by the grant deed. No reservation was shown. Due to the length of time it took to complete the transaction, it was necessary to harvest the crop and all parties realized this. Accordingly, defendants orally agreed to pay plaintiff the power costs and irrigation costs to assist in its production, with the further consideration that if the transaction failed they would purchase the hay at $28 per ton. This appears to be an independent executed oral agreement and there was a sufficient consideration for it. Apparently, defendants were given possession of the hay under the agreement. There was a conflict as to the extent of any growing crop on the land at the time of the actual sale. Defendants placed its height as 4 to 6 inches, averred that it was dormant, that the growing season was over, and that it was only good for grazing purposes. Plaintiff said its height was about 12 to 16 inches. We conclude that there is sufficient evidence to show a separate executed oral agreement, not in conflict with the

original writings, and that there was sufficient consideration for it.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied December 4, 1962, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1963.