[Civ. No. 7398. Fourth Dist. July 6, 1965.]

IDA M. CAREY et al., Plaintiffs, Cross-defendants and Appellants, v. GLENCO CITRUS PRODUCTS, Defendant, Cross-complainant and Respondent.

574

J. Clifford Argue and Wilbur E. Quint for Plaintiffs, Cross-defendants and Appellants.

Harry C. Cogen and Robert S. Cogen for Defendant, Cross-complainant and Respondent.

COUGHLIN, J.—The plaintiffs were the owners of adjoining 10-acre orange groves and brought this action to quiet their title thereto against claims of the defendants Tietz Construction Company, a corporation, Capitol Estates No. 1, Inc., a corporation, World Market Properties No. 2, Inc., a corporation, and Glenco Citrus Products Co., a partnership, hereinafter respectively referred to as Construction Company, Capitol Estates, World Properties and Glenco. The defendant Glenco answered and cross-complained, alleging the purchase of an orange crop growing on the subject property and its subsequent conversion by plaintiffs. All other defendants defaulted. The court entered judgment on the complaint in favor of plaintiffs and on the cross-complaint in

favor of Glenco, finding that plaintiffs had converted the orange crop and awarding damages.

On May 1, 1960, plaintiffs executed 99-year leases in favor of Construction Company which, on May 18, 1960, executed assignments thereof to Capitol Estates. The leases and assignments were recorded.

On November 7, 1960, Construction Company executed a document entitled "AGREEMENT FOR PURCHASE OF VALENCIA ORANGES" under which Glenco claimed the orange crop upon the leased premises. One of the issues on appeal is whether Glenco obtained title to this crop through this agreement, because it purportedly was executed by Construction Company instead of Capitol Estates. The assignments of the leases by Construction Company to Capitol Estates, and the agreement between Construction Company and Glenco were executed by Bill W. Tietz, as president. The court found, in substance, that Bill W. Tietz, Construction Company and Capitol Estates, for the purpose at hand, were one and the same legal entity, i.e., that each of the two corporations was the *alter ego* of Tietz; that in executing the agreement of sale, purportedly on behalf of Construction Company, Tietz intended to transfer to Glenco any interest in the orange crop owned by Construction Company, Capitol Estates, or himself; and that, as a result of this transaction, Glenco obtained that interest in the crop. This conclusion was based upon and is supported by the principle, applied under the *alter ego* theory, that the courts will refuse to recognize the fiction of a separate corporate existence where to do so would result in an injustice. (*Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 522 [203 P.2d 522].) We have reviewed the record and find, contrary to plaintiffs' contention, that the evidence, which need not be set forth in detail, amply supports the conclusion that Tietz and the two corporations were one and the same legal entity. (*Estate of Arstein*, 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d 33]; *Cottle* v. *Gibbon*, 200 Cal.App.2d 1, 6 [19 Cal.Rptr. 82]; *Pores* v. *Purity Milk Co.*, 135 Cal.App.2d 305, 309 [287 P.2d 169].) If the controversy at bench had been between Glenco and Capitol Estates, the conclusion that the former obtained the interest in the orange crop conveyed by the sale agreement would have been beyond question. In this regard it is noteworthy that Tietz testified he was authorized to act on behalf of both corporations and in executing the agreement

of sale he intended to transfer the interest in the orange crop acquired under the leases. In the absence of any showing that application of the *alter ego* theory to the sales transaction in question resulted in an injustice to plaintiffs, the latter may not object thereto. (Cf. *Dunn* v. *Price*, 112 Cal. 46, 51 [44 P. 354]; *Jackson* v. *Donovan*, 215 Cal.App.2d 685, 689-690 [30 Cal.Rptr. 755].) The circumstances in this case do not indicate any such injustice.

■ The further contention of plaintiffs that the *alter ego* theory should not be considered because not placed in issue by the pleadings is without merit. Reasonably construed, the joint pretrial statement of the parties, and the pretrial order incorporating such, adequately placed in issue Glenco's contention that Tietz Construction Company and Capitol Estates should be treated as a single entity. In addition, without objection, the *alter ego* issue was tried by the parties and by the court. Under these circumstances, the alleged deficiency in the pleading is not a subject of appellate concern. (*Collison* v. *Thomas*, 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51].)

The November 7, 1960, agreement for purchase of the orange crop covered not only the crop on plaintiffs' property but also that on an adjoining 20-acre parcel; fixed the purchase price at $15,000; acknowledged receipt of that sum, which was paid by Glenco; and provided that the buyer would pay "for all care of the grove (which covers irrigation and normal pest control) from this date on, and until the entire crop is harvested in 1961, and permission is hereby granted for such purposes to maintain the crop." The trial court found that title to the crop "passed" to Glenco on Nov. 7, 1960, i.e., upon execution of the aforesaid agreement.

The subject leases provided for the payment of a monthly rental in the sum of $1,000; for the payment of taxes assessed against the leased premises; and for termination of the leases in the event of a default in these payments. There was no default until failure to pay the taxes due and delinquent on December 10, 1960, and the monthly installment due on January 1, 1961. The termination provisions of the leases were: "Time and each of the terms, covenants and conditions hereof are expressly made of the essence of this agreement, and in the event Lessee or any assigns of Lessee holding title to this lease shall fail to comply with any of the terms, covenants or conditions of this lease, and shall fail to

remedy the same within ninety (90) days after written notice from Lessor so to do specifying the nature of such default, Lessor may, at Lessor's option, without notice or demand, enter upon the leased premises and take possession thereof . . . , and should Lessor elect to re-enter and take possession of said property, Lessor may, at Lessor's option, either terminate the lease . . . or . . . relet said property. . . ."

Plaintiffs caused a notice of default, dated January 10, 1961, and directed to ''Tietz Construction Company'', to be served on Bill W. Tietz, which stated:

"PLEASE TAKE NOTICE that you are in default under the terms of that certain lease dated May 1, 1960. . . .

"Said default consists of failure on your part to pay county taxes now due and failure to pay the rental payment due on January 1, 1961.

"Demand is hereby made upon you to remedy said default within ninety (90) days . . . or Lessor will either terminate this lease or institute an action for damages as provided for in said lease."

The notice was not served upon Glenco. It was stipulated in the joint pretrial statement, and the court found, that plaintiffs had actual notice of the purchase of the orange crop by Glenco prior to May 22, 1961, but how long prior thereto does not appear. On March 10, 1961, Construction Company and Capitol Estates assigned their interest in the leases to World Properties. Neither the tax installment delinquent on December 10, 1960, that delinquent on April 10, 1961, nor any of the monthly rental payments due under the leases commencing with January 1, 1961, were paid. On May 22, 1961, plaintiffs served upon Bill W. Tietz written notice of termination of the leases and of reentry upon the leased premises addressed to ''Tietz Construction Company.''

Previously Glenco had caused the harvesting of 1,408 boxes of fruit from the property of the plaintiff Carey, which it sold for $2,107.98. On the date plaintiffs served Tietz with notice of termination, i.e., May 22, 1961, they also notified Glenco that it was not to pick the remaining orange crop. Subsequently, plaintiffs harvested the balance of the crop. The court found that Glenco was the owner of the unharvested part of the crop remaining upon the leased premises on May 22, 1961; that the plaintiffs converted the same on that date; and that ''the reasonable value of the crop har-

vested and sold'' by the plaintiffs was the sum of $13,692.70, being the gross amount realized by them from the sale. Judgment was entered in favor of Glenco and against the plaintiff Carey in the sum of $5,964.13, and against the plaintiff Powell in the sum of $7,728.57, respectively being the amounts each realized from that part of the crop harvested from her grove.

The plaintiffs claim that, even though the interest of the lessee in the orange crop upon the leased property had been transferred to Glenco, the latter was not owner of the crop remaining on the trees at the time of the alleged conversion, i.e., May 22, 1961, because its right thereto terminated upon termination of the leases. This contention is based upon the legal premise that the right of a buyer to unharvested crops growing upon leased premises under a sale by the lessee terminates upon termination of the lease, citing *Eberhardt* v. *Bass,* 39 Cal.2d 1, 7 [243 P.2d 789] ; *Agoure* v. *Plummer,* 175 Cal. 543, 546 [166 P. 311], and *Reeves* v. *Watson,* 124 Cal. App. 534, 539 [12 P.2d 1050], in support of this position; and upon the factual premise that the subject leases had been terminated. In reply Glenco contends that the legal premise basic to plaintiffs' argument is not the law of this state, and also that the subject leases had not been terminated, urging various reasons in support of this contention, including insufficiency of the notice of default, failure to give such notice to Glenco, and failure to serve notice of termination upon World Properties.

We have concluded that termination of the leases, assuming such to be the fact, did not affect the right of Glenco to the unharvested fruit growing upon the leased premises, which it theretofore had purchased and which remained thereon at the time of such termination.

 For some purposes growing crops are regarded as part of the realty upon which they are growing, while for other purposes they are regarded as personalty. (See *Wilson* v. *White,* 161 Cal. 453, 460 [119 P. 895] ; *Huerstal* v. *Muir,* 64 Cal. 450, 453 [2 P. 33] ; *List* v. *Sandell,* 42 Cal. App.2d 505, 507 [109 P.2d 376].) In California, by statute, ''industrial growing crops . . . which are agreed to be severed . . . under the contract of sale, shall be treated as goods'' to be governed by the provisions of the Civil Code regulating the sale of goods. (Civ. Code, §§ 658, 660, 1796[1]; *Smith* v. *Baker,* 95 Cal.App.2d 877, 882 [214 P.2d 94].)

---

[1]Section 1796 was repealed as of January 1, 1965.

■ As a consequence, growing crops which are agreed to be severed under a contract of sale cease to be a part of the realty and become personalty. (See generally *Peterson* v. *Gibbs,* 147 Cal. 1, 6 [81 P. 121, 109 Am.St.Rep. 107]; *Palmer* v. *Wahler,* 133 Cal.App.2d 705, 711 [285 P.2d 8]; *List* v *Sandell, supra,* 42 Cal.App.2d 505, 507.) Under these circumstances, in substance, a constructive severance of the crop from the realty occurs. (See *Wilson* v. *White, supra,* 161 Cal. 453, 460; *Palmer* v. *Wahler, supra,* 133 Cal. App.2d 705, 712; *Smith* v. *Baker, supra,* 95 Cal.App.2d 877, 882.) ■ Under such a sale title to the crop ''is transferred to the buyer at such time as the parties to the contract intend it to be transferred'' (Civ. Code, § 1738[2], even though the crop is growing and has not matured. (*Jones* v. *California Growers & Shippers, Inc.,* 182 Cal. 777, 778 [190 P. 172]; *Dabovich* v. *Emeric,* 7 Cal. 209, 212.) ■ Where the contract is silent respecting such intent the issue as to when title passes is one of fact. (*Aiello* v. *Sliskovich,* 72 Cal.App.2d 39, 42 [163 P.2d 768]; *United Fruit Distribution Co.* v. *Stone,* 95 Cal.App. 131, 136 [272 P. 299].)

■ A lessee of real property holds title to the crops growing thereon (Civ. Code, §§ 819, 820; *Silveira* v. *Ohm,* 33 Cal.2d 272, 275 [201 P.2d 387]), which includes fruit growing on trees (*Story* v. *Christin,* 14 Cal.2d 592, 595 [95 P.2d 925, 125 A.L.R. 1402]; *Vulicevich* v. *Skinner,* 77 Cal. 239, 240 [19 P. 424]; *Cottle* v. *Spitzer,* 65 Cal. 456, 457-458 [4 P. 435, 52 Am.Rep. 305]), and may sell the same. ■ By law, the leases between plaintiffs and Construction Company, even though containing no express provisions concerning the matter, conferred upon the latter, as lessee, the right to sell the orange crop growing upon the leased premises.[3] The agreement between it and Glenco did not expressly declare the intention of the parties respecting time of transfer of title. However, the court found that Glenco became owner of the crop, i.e., that title thereto was transferred to it, at the time of the execution of the agreement, *viz,* on November 7, 1960. There is substantial evidence in support of this finding; the crop then was in existence; Glenco had paid the purchase price therefor in full; and, at its own cost, was to care for the grove, which included irrigation and pest control

[2]Repealed as of January 1, 1965.

[3]It is noteworthy that each lease expressly conferred upon the lessee the right to destroy the trees growing on the leased premises.

measures, from the date of the agreement to harvest, for the purpose of maintaining the crop. (See *Johnson* v. *Besoyan,* 85 Cal.App.2d 389, 392 [193 P.2d 63]; *Aiello* v. *Sliskovich, supra,* 72 Cal.App.2d 39, 41; *Gianelli* v. *Globe Grain & Milling Co.,* 48 Cal.App. 103, 106 [191 P. 720].) From the date of sale to date of alleged termination of the leases Glenco had cared for the grove; had picked a substantial part of the crop upon the premises of the plaintiff Carey; and had made arrangements for harvesting the balance.

■ By implication, the buyer of a growing crop has a reasonable time within which to harvest the same after it matures (generally see *Story* v. *Christin, supra,* 14 Cal.2d 592, 595; cf. *Owsley* v. *Whelan Drug Co.,* 83 Cal.App.2d 454, 457 [189 P.2d 50]; *Mayer* v. *Hazzard,* 10 Cal.App.2d 1, 3 [51 P.2d 189]; *Blaeholder* v. *Guthrie,* 17 Cal.App. 297, 299 [119 P. 524]), and, as an incident of the sale, is given a license to go upon the realty whereon it is growing for that purpose. Upon termination of such a license, by analogy to the rule generally applicable, "the licensee must be given a reasonable opportunity to remove himself and his effects from the land", which would include the crop growing thereon theretofore purchased by him. (Rest., Property, vol. 5, § 519(2), p. 3133.)

■ The leases in the case at bench, by law, conferred on the lessee the right to sell the crop growing upon the leased premises, and to confer upon the buyer thereof a license to harvest the same within a reasonable time after the fruit matured. The lessee exercised this right while the lease was in effect and the title of the buyer to the fruit acquired through the subject sale, as well as its right to go upon the leased premises to harvest the same as an incident to the completed purchase thereof, were not affected by termination of the leases on account of lessee's default in payment of rent and taxes. At the time of the alleged termination of the leases the fruit was personal property owned by Glenco, and the refusal of plaintiffs to permit Glenco to harvest it constituted a conversion. (*Story* v. *Christin, supra,* 14 Cal.2d 592, 595-596; see also *Peterson* v. *Gibbs, supra,* 147 Cal. 1, 6-8.)

The decisions upon which plaintiffs rely in support of their position are not authority for the legal premise they advance; contrary to their claim, are not "cases dealing with sale of growing crops by a lessee"; also are otherwise factually distinguishable from the case at bench; and do not

consider the effect of sections 658, 660 and 1796 of the Civil Code, the provisions of which are basic to the decision herein.

The foregoing conclusions dictate an affirmance of the judgment on the issue of liability and render unnecessary any consideration of plaintiffs' contentions relating to other matters on that issue, including their claim respecting the effectiveness of their alleged termination.

■ On the other hand, plaintiffs' contention respecting error relating to the issue of damages is well taken. There was no evidence from which the court could have concluded that the reasonable market value of the crop on the trees at the time of the conversion, i.e., May 22, 1961, was the amounts awarded Glenco as damages, *viz*, the sum of $5,964.13 against the plaintiff Carey and the sum of $7,728.57 against the plaintiff Powell. The evidence shows without dispute that after conversion the fruit remained on the trees for approximately two months during which time it was cared for by plaintiffs; thereafter was harvested; and then was sold. Evidence of the amounts received by plaintiffs from such sale did not establish the reasonable value of the fruit on the trees at the time of conversion, because the amounts received included reimbursement for expenses incident to the care, harvesting and marketing incurred by plaintiffs subsequent to conversion. This conclusion is made evident by the findings of the court that the plaintiff Carey received a total of $5,964.13 for the oranges picked from her property with a net profit of $4,616.60, and the plaintiff Powell received a total of $7,728.57 from the oranges picked from her property with a net profit of $6,515.44.

■ Under the circumstances of this case the measure of damages for conversion of the orange crop was either (1) the reasonable value thereof at the time of conversion, with interest thereon from that date, or (2) the amount which Glenco might have received from the sale of the crop in due course of events, had it been permitted to sell such, less the reasonable and necessary costs of production, harvesting and marketing from the time of conversion to sale, whichever was the larger. (Civ. Code, § 3336; *Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 644 [198 P.2d 1]—overruled on another point; *Crofoot Lumber, Inc.* v. *Ford*, 191 Cal.App.2d 238, 247 [12 Cal.Rptr. 639]; cf. *Daly* v. *Smith*, 220 Cal.App.2d 592, 598, 602 [33 Cal.Rptr. 920].)

582

If the conclusion of the court respecting the amount awarded Glenco was based upon the rule of damages authorizing recovery of the market value of the crop at the time of conversion, it is not supported by the evidence. If its conclusion was predicated upon an application of the rule authorizing recovery of the amount for which the crop might have been sold, less expenses, using the sale of plaintiffs as a basis therefor, it is contrary to the findings. In either event the trial court erred in determining the issue of damages.

That part of the judgment on the issue of liability is affirmed; and that part of the judgment on the issue of damages is reversed with instructions to retry that issue in harmony with the views expressed herein. Plaintiffs will recover costs on appeal.

Brown (Gerald), P. J., and Whelan, J., concurred.