Filed 9/21/15  Krinsk v. Luxury Link CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JEFFREY R. KRINSK, | D066254 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00076426-CU-BT-CTL) |
| LUXURY LINK, LLC, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Affirmed.


Finkelstein & Krinsk, Mark L. Knutson and William R. Restis for Plaintiff and Appellant.

Sidley Austin, Bradley H. Ellis, Amy P. Lally and Nitin Reddy for Defendant and Respondent.

Plaintiff Jeffrey R. Krinsk, individually and on behalf of a class of those similarly situated, appeals from a judgment of dismissal following the sustaining of a demurrer without leave to amend.

Plaintiff purchased a vacation package from defendant Luxury Link, LLC (Luxury Link), but failed to redeem it within the time period contained in Luxury Link's solicitation and confirmed in Luxury Link's acceptance of plaintiff's bid.  In his class action complaint, plaintiff alleges six causes of action based on Luxury Link's refusal to provide a refund or to apply a credit or other adjustment for a different vacation package.

While we disagree with the trial court's stated reasons for sustaining Luxury Link's demurrer without leave to amend, we agree with Luxury Link that plaintiff's complaint fails to state facts sufficient to constitute a cause of action.  Accordingly, we affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of the facts assumes the truth of the properly pleaded or implied factual allegations, as well as matters which may be judicially noticed.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)

On its Web site, Luxury Link describes its business as offering " 'luxury vacation deals . . . at a substantial savings — up to 65% off ' " by " 'partnering with the world's most extraordinary hotels, resorts, villas and cruise lines.' "  At issue in plaintiff's claim is a Luxury Link vacation package for three nights at the Inn and Spa at Loretto (Loretto) in Santa Fe, New Mexico (Loretto package).  Plaintiff paid Luxury Link "$1,042.00 plus a

2

$40.00 'handling fee' " for the Loretto package, based on Luxury Link's initial "base price" and a bidding process on Luxury Link's Web site that plaintiff compares to an auction.[1] More specifically at issue is the allegation that "[p]laintiff's [Loretto] package purportedly expired on May 12, 2011."

Plaintiff does not allege either that he did not know the date of expiration prior to bidding on the Loretto package or that the amount of time during which the package was valid was unreasonably short. He alleges only that, after he purchased the Loretto package, he was "unable to use" it prior to its May 12, 2011 expiration, that Luxury Link "refused to allow [p]laintiff to negotiate a vacation package extension with the vacation facility" and that Luxury Link's refusal to provide him with a "refund, repricing [*sic*], credit or other adjustment" is "illegal conduct." Plaintiff further contends that Luxury Link's agreement is a contract of adhesion and that, by keeping the money plaintiff paid for the Loretto package without providing him additional consideration, Luxury Link effected an "improper forfeiture" of his funds. Because the amount of this alleged forfeiture ($1,082) has no reasonable relationship to any actual damages Luxury Link

---

[1]    In its brief, Luxury Link compares two of its products:  an "Auction feature" in which the payment for a vacation package is nonrefundable, and a "Buy Now feature" in which the payment for a vacation package is refundable.  However, Luxury Link's record reference for this statement is to its points and authorities in the trial court, and the complaint does not contain allegations about the Buy Now feature.  Because we consider on appeal only "properly pleaded or implied factual allegations," as well as matters which may be judicially noticed (*Schifando*, *supra*, 31 Cal.4th at p. 1081), we have disregarded Luxury Link's description of and reliance on the Buy Now feature and how it differs from the Auction feature.

may have incurred, plaintiff continues, the funds Luxury Link kept are illegal punitive damages.

Plaintiff purports to represent a class of " 'California residents that from November 14, 2009 through the commencement of this lawsuit, who purchased a Luxury Link vacation package that was subsequently declared by Luxury Link to be forfeited by Luxury Link because it was not used within a specified time period.' "[2]

Based on these allegations, plaintiff alleges six causes of action against Luxury Link:  (1) a violation of Civil Code section 1671, which provides that, upon the requisite showing, a liquidated damages provision in a contract is void; (2) a violation of Civil Code section 1670.5, which deals with potential court action upon the finding that a term of a contract is unconscionable; (3) breach of contract, including specifically breach of the implied covenant of good faith and fair dealing; (4) violations of California's Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq., which provides for remedies upon a sufficient showing of an unfair, unlawful or fraudulent business act or practice; (5) violations of California's False Advertising Law (FAL), Business and Professions Code section 17500 et seq., which provides for remedies to consumers upon a sufficient showing of untrue or misleading advertisements; and (6) violations of California's Consumer Legal Remedies Act (CLRA), Civil Code

---

[2]     Plaintiff pleads that *his funds* were forfeited, yet he inconsistently pleads that *the putative class's vacation packages* were forfeited.  Because of our analysis of the contract at part II.C. *ante*, this inconsistency is irrelevant to our determination whether the complaint alleges facts sufficient to constitute a cause of action.

section 1750 et seq., which provides for remedies to consumers upon a sufficient showing of unfair or deceptive actions or unfair methods of competition in the sale of goods or services.[3]

Luxury Link demurred to the entire complaint on the ground there is another action pending between parties in privity on the same causes of action related to the same contract (Code Civ. Proc., § 430.10, subd. (c)) and to each individual cause of action, as well as to the class claims, on the ground each fails to state a cause of action (*id*., subd. (e)).

The other action pending, according to Luxury Link's points and authorities and request for judicial notice in the trial court, was *Krinsk v. Luxury Link, LLC* (Super. Ct. San Diego County, 2012, No. 37-2012-00084650-CU-BT-CTL) (*Krinsk I*). In *Krinsk I*, plaintiff's law firm filed and prosecuted a class action complaint against Luxury Link on behalf of plaintiff's wife based on the same Loretto package that is at issue in the present action. The major difference is that plaintiff's wife alleged she "received" the Loretto package, whereas here plaintiff alleges he "purchased" the Loretto package.[4] Otherwise,

---

[3]    In his opening brief, plaintiff presents various arguments based on Luxury Link's purported status as "a travel agent and thereby a fiduciary under California law," citing Business and Professions Code sections 17550-17550.30. We have disregarded these statements, since the complaint alleges neither a fiduciary relationship between Luxury Link and plaintiff nor sufficient facts from which we might apply the cited sections of the Business and Professions Code. Notably, plaintiff has not requested leave to amend to assert causes of action based on what he argues is the fiduciary duty of a statutorily defined travel agent. (See pt. II.D., *post*.)

[4]    Correspondingly, in *Krinsk I* plaintiff's wife alleged her putative class to be California residents who " 'purchased and/or received a Luxury Link vacation package,' "

5

the six cause of action, 27-page second amended complaint in *Krinsk I* (the record does not contain copies of the two complaints that preceded it) is almost identical to plaintiff's six cause of action, 27-page complaint here.  In *Krinsk I*, the trial court, the Honorable Joan M. Lewis, presiding, sustained Luxury Link's demurrer to the second amended complaint, ruling both that plaintiff's wife (as the recipient, not the purchaser, of the Loretto package) lacked standing as to all causes of action and that each cause of action failed to state facts sufficient to constitute a cause of action (Judge Lewis's order). The related judgment of dismissal became final prior to the court's ruling on Luxury Link's demurrer in the present action.[5]

Plaintiff opposed the demurrer, and Luxury Link replied to the opposition — each filing a request for judicial notice in support of the respective submission.

The trial court, the Honorable Timothy B. Taylor, presiding, issued a tentative ruling, entertained lengthy oral argument, took the matter under submission, and issued a written minute order sustaining without leave to amend Luxury Link's demurrer.  In its written ruling, the court recited the history of *Krinsk I*, including incorporating Judge Lewis's order, and concluded that, by filing the present lawsuit instead of

---

whereas here plaintiff alleges his putative class to be California residents who " 'purchased a Luxury Link vacation package.' "

[5]     Like the trial court, we take judicial notice of the following documents in *Krinsk I*: the second amended complaint, Judge Lewis's order and the dismissal of the appeal from the judgment of dismissal.  (Evid. Code, § 459, subd. (a) ["reviewing court shall take judicial notice of . . . each matter properly noticed by the trial court"]; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 ["appellate courts should judicially notice any fact of which the trial court took proper judicial notice"])

amending the complaint in *Krinsk I* to add himself as a plaintiff (or pursuing an appeal of the judgment), plaintiff inappropriately asked one judge of the superior court (Judge Taylor) to review the final decision of another judge of the superior court (Judge Lewis). That is to say, Judge Taylor sustained the demurrer on the basis he would not review Judge Lewis's order.

The court entered a judgment of dismissal, Luxury Link gave notice of its entry and plaintiff timely appealed.

## II.

## DISCUSSION

Plaintiff contends that the judgment must be reversed, because the events in *Krinsk I* have no bearing on the complaint in this action and because the complaint alleges sufficient facts to support each of the causes of action — namely, that Luxury Link's refusal to provide a refund or to apply a credit or other adjustment to a different vacation package resulted in an unreasonable forfeiture. We disagree. As we will explain, based on the terms of the agreement between the parties in the purchase and sale of the Loretto package, plaintiff has not met his burden of establishing that that the complaint states facts sufficient to constitute a cause of action.

A.    *Standard of Review*

Because a demurrer tests the legal sufficiency of the facts alleged in a complaint, "[w]e independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense." (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219

7

Cal.App.4th 75, 81.) We continue to assume the truth of the properly pleaded or implied factual allegations, as well as matters which have been judicially noticed (*Schifando*, *supra*, 31 Cal.4th at p. 1081) and "must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons" (*Siliga*, at p. 81; see *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 740 [on appeal following demurrer, "it is the ruling, not the rationale, that is reviewable"]).

B.      *The Issues Not Involving the Merits Do Not Resolve the Appeal*

First, the court's stated reason for sustaining the demurrer — namely, that Judge Taylor may not vacate, nullify or otherwise review Judge Lewis's order — is not helpful. Luxury Link's demurrer did not involve, let alone require, Judge Taylor to vacate or nullify Judge Lewis's order, and to the extent the demurrer required Judge Taylor to review Judge Lewis's order to determine whether the doctrine of res judicata barred plaintiff's complaint, the court expressly declined to consider that argument.[6]

On appeal, Luxury Link encourages us to affirm the dismissal on the basis of res judicata. However, before the doctrine of res judicata — whether as claim preclusion or issue preclusion — can be asserted as a bar against plaintiff, there must be a sufficient

---

[6]      The court was understandably displeased with what it considered to be "judge shopping" by plaintiff following Judge Lewis's order. However, the demurrer was not brought on that basis, and neither the trial court's order, Luxury Link's brief on appeal, nor our independent research has disclosed authority for the sua sponte sustaining of the demurrer on that basis.

showing that plaintiff and plaintiff's wife are "in privity." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-825.) Luxury Link, following the trial court's cues, argues plaintiff and his wife are in privity on two grounds: (1) as husband and wife they are "in privity concerning a financial interest in community property"; and (2) plaintiff, an attorney, represented his wife in *Krinsk I*, "further evidencing [p]laintiff's 'proprietary or financial interest in' and control of the prior action." However, the complaint does not contain allegations and no proper request for judicial notice contains facts that could support either of the following findings: (1) that plaintiff used community funds to purchase the Loretto package; or (2) that plaintiff had a proprietary or financial interest in *Krinsk I*. Accordingly, the record on appeal does not provide a basis on which privity, and thus res judicata, can be determined.

Accordingly, we turn to the merits.

C.      *The Complaint Does Not State Facts Sufficient to Constitute a Cause of Action*

Before we can determine whether the complaint alleges facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)), we must first determine the terms of the parties' agreement. In so doing, we are mindful that our goal is "to give effect to the mutual intention of the parties *as it existed at the time of contracting*, so far as the same is ascertainable and legal." (Civ. Code, § 1636, italics added; see *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385 (*Klein*).) We are to determine this intent according to objective, not subjective, criteria. (*Klein*, at p. 1385.) Given the procedural posture of this appeal, we must accept plaintiff's

9

allegations regarding the terms of the agreement.  (*Ibid.*; *Schifando*, *supra*, 31 Cal.4th at p. 1081.)

Luxury Link solicited plaintiff "to 'bid' (as the term is used at auction)" on the Loretto package, having posted a "base price" in the solicitation.  Luxury Link's advertising in support of its solicitation expressly states that "the vacation packages are 'nonrefundable.' "  The Loretto package included three nights in a deluxe room at the Loretto and "expired on May 12, 2011."[7]  Plaintiff's "winning . . . bid" — i.e., offer — for the Loretto package was "$1,042.00 plus a $40.00 'handling fee' payable to Luxury Link."  Luxury Link accepted plaintiff's bid, and plaintiff paid Luxury Link "in full upon paying the price resulting from the auction process."[8]  In sum, in exchange for $1,082, plaintiff received the right for a three-night stay at Loretto prior to May 12, 2011 (the Contract).

In the context of the Contract (which contains no promises by Luxury Link of any performance other than the three nights' lodging prior to May 12, 2011), the thrust of plaintiff's complaint is that when a customer (like plaintiff) does not redeem a prepaid

---

[7]     Before bidding, plaintiff had the opportunity to review a number of "Frequently Asked Questions" on Luxury Link's Web site.  In response to the question " 'What *flexibility in travel dates* exists with the Auctions?' " Luxury Link warns potential bidders that "[s]hould your preferred date range be narrow, it is highly recommended you contact the property and validate availability BEFORE making a bid."  (Italics added.)  Another question and answer set suggests that the only changes to "an existing package" Luxury Link will consider has to with children or the type of room.

[8]     Luxury Link's prebid auction site "and/or" Luxury Link's acceptance of a customer's bid expressly discloses that the package is valid only between specifically identified dates.

vacation package before it expires, "Luxury Link does not return any of the money received"; Luxury Link "refus[es] . . . to alternatively apply the promotional value, or some of it, to the same vacation package[] on alternative dates"; and "[n]o refund, repricing [*sic*], credit or other adjustment is allowed by Luxury Link." Our reading of the allegations, in a light most favorable to plaintiff, tells us nothing more than plaintiff is displeased with Luxury Links' customer service: Luxury Link failed to undertake *additional* responsibilities (even though plaintiff offered *additional* consideration) solely because plaintiff failed to take advantage of exactly what he bought and exactly what Luxury Link sold pursuant to the Contract. Plaintiff alleges that this failure resulted in a forfeiture of plaintiff's payment, similar to an undisclosed liquidated damages provision or an unconscionable term in a contract of adhesion. We disagree. By its very terms, the benefit of plaintiff's bargain — namely, the opportunity to spend three nights at the Loretto — expired on May 12, 2011. Plaintiff did not forfeit anything; he paid the agreed-upon consideration and then failed to take advantage of the benefit of his bargain.

As we will explain, given the facts alleged by plaintiff, Luxury Link had no statutory or contractual obligation to provide plaintiff with a credit or to take on additional responsibilities by rebooking a new or different package at Loretto or elsewhere.

     1.    *First Cause of Action — Liquidated Damages*

Civil Code section 1671 deals with the validity of liquidated damages provisions: subdivision (d) sets forth what is unacceptable and void for contracts involving the lease of residential real property and the retail purchase or rental of certain personal property or

11

services, and subdivision (b) sets forth the standard for all other contracts. Inconsistently, plaintiff alleges that the Contract violated both subdivisions.

In his first cause of action, plaintiff seeks relief for violations of Civil Code section 1671, based on the following allegations:

> "Luxury Link requires that [p]laintiff . . . redeem the vacation package previously purchased by a certain date. *The failure to do constitutes a breach of the agreement with Luxury Link.* [¶] . . . *Consumers make a full deposit of funds to Luxury Link at the time a vacation package is sold, to be redeemed within a certain time* period. . . . [¶] . . . The failure to redeem the vacation package by booking it through Luxury Link with the time period dictated by [Luxury Link] resulted in [p]laintiff's . . . complete forfeiture of the money paid for the vacation package . . . ." (Italics added.)

The premises for plaintiff's claim are wrong. First, plaintiff did not breach the Contract by failing to redeem the certificate by May 12, 2011. Second, plaintiff did not merely "make a full deposit" to Luxury Link at the time Luxury Link sold the Loretto package. Rather, plaintiff fully performed his obligations under the Contract upon his payment of $1,082; correspondingly, Luxury Link fully performed its obligations under the Contract — and thus fully earned the entire payment — once Luxury Link delivered the certificate for the Loretto package to plaintiff. The related right to redeem the certificate for the Loretto package *expired by its own terms*, terms of which plaintiff was aware prior to making his offer, before plaintiff ever attempted to redeem it.

We agree with Luxury Link that *Folden v. Lobrovich* (1959) 171 Cal.App.2d 627 is instructive. There, the prospective tenants "bought, for the sum of $2,400, the privilege of having [the landlord's] store building available for their use and occupancy for a 10-year term should they be able to negotiate leases of the other properties. Having

12

failed to secure such leases, the contract has, by its express terms, been fully performed and is at an end." (*Id.* at p. 629.) The provision in the contract that allowed the landlord to keep the $2,400 was not a potentially invalid liquidated damages provision, because Civil Code section 1670 is "concerned only with breaches of contract." (*Folden*, at p. 629.)

Likewise, here, because plaintiff did not breach the Contract, there were no damages — actual or liquidated — for Luxury Link to recover. Stated differently, having not breached the Contract, plaintiff did not forfeit anything.

The court did not err in sustaining Luxury Link's demurrer to the first cause of action.

2.      *Second Cause of Action — Unconscionability*

Civil Code section 1670.5, subdivision (a) provides that if a court concludes that a clause of a contract was "unconscionable at the time it was made," the court may refuse to enforce all or part of the contract in order to avoid an unconscionable result.

In his second cause of action, plaintiff alleges that, because Luxury Link's auction process is presented on a take-it-or-leave-it basis without the opportunity to negotiate the terms of the agreement, the agreement to purchase the Loretto package was a " 'contract of adhesion,' " resulting in " 'oppression' " due to the "inequality of bargaining power" of the respective parties. For these reasons, the complaint continues, the terms of the agreement by which plaintiff "forfeited the value of his Luxury Link vacation package" are unconscionable, and plaintiff seeks an appropriate remedy under Civil Code section 1670.5.

13

However, Civil Code section 1670.5 has limited application. Section 1670.5 "does not in itself create an affirmative cause of action but merely codifies the defense of unconscionability." (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 217 (*California Grocers*).) Here, plaintiff improperly attempts to seek affirmative relief under the statute

The court did not err in sustaining Luxury Link's demurrer to the second cause of action.

3. *Third Cause of Action — Breach of the Implied Covenant of Good Faith and Fair Dealing*

The law implies in every contract a covenant of good faith and fair dealing, which requires each party to refrain from doing anything to injure the right of the other to receive the benefits of the parties' agreement. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [insurance contract]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 342 (*Guz*) [employment contract].)

In his third cause of action, plaintiff alleges that Luxury Link breached the covenant of good faith and fair dealing implied in the Contract. More specifically, plaintiff alleges that, by construing the Contract to "require forfeiture of consideration paid for and the face value of the [Loretto] package," Luxury Link breached its duty of good faith and fair dealing, "wrongfully den[ying p]laintiff . . . the benefit of the bargain under the [Loretto] package[]." Plaintiff asserts that this implied covenant *required* Luxury Link to construe its Contract — which, plaintiff acknowledges, provides that the Loretto package expired on May 12, 2011 — "in a manner that would allow

14

[p]laintiff . . . to book [his] vacation package[] at a date in the future, by paying an additional 'Handling Fee' and/or paying the difference in price for travel at a future date, rather than complete forfeiture."  We disagree.

First, Luxury Link did not deny plaintiff the benefit of his bargain.  As we explained at part II.C. *ante*, the benefit of plaintiff's bargain was the opportunity to spend three nights at the Loretto *prior to May 12, 2011.*  Plaintiff did not forfeit anything by failing to redeem the benefit of his bargain before it expired.

Moreover, to accept plaintiff's allegations that, after expiration of the Loretto package, he should be entitled to book another different vacation package and/or pay the difference in price for travel at a future date would entirely rewrite the terms of the parties' Contract.  Such allegations also assume that Luxury Link is able to accommodate the requests, which involve services and a product different from what Luxury Link made available during the auction process that resulted in the Contract.  However, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz*, *supra*, 24 Cal.4th at pp. 349-350.)  The implied covenant exists "to receive the *benefits of the agreement actually made*," not to create new ones.  (*Id.* at p. 349.)

The court did not err in sustaining Luxury Link's demurrer to the third cause of action.

4.      *Fifth Cause of Action — FAL*

California's FAL, Business and Professions Code section 17500 et seq., allows a private plaintiff to seek certain equitable remedies upon a sufficient showing that

15

members of the general public are likely to be deceived by a defendant's advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" by the defendant. (*Id.*, § 17500; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950-951 (*Kasky*).)

In his fifth cause of action, plaintiff alleges that, in advertising the Loretto package, Luxury Link misled and deceived the public by using the word " 'nonrefundable.' "  More specifically, plaintiff alleges that, prior to the sale of the package, Luxury Link did not "inform[] customers in a meaningful manner that what Luxury Link means to say is that it will confiscate all money expended by [p]laintiff . . . , *i.e.*, complete forfeiture, if the reservation is not made within the allotted time."  A "[r]easonable consumer," plaintiff continues, would expect that, if the reservation is not made within the allotted time and the payment not refunded, the consumer would still be able "to use the purchased package in the future, paying the difference, if any, between the promotional rate and its standard rate counterpart."  We will consider this fifth cause of action under the FAL before our consideration of the fourth cause of action under the UCL, because " '[a]ny violation of the [FAL] . . . necessarily violates' the UCL."  (*Kasky*, *supra*, 27 Cal.4th at p. 950.)

We are aware that a reasonable consumer's expectations and likelihood of deception are normally questions of fact not conducive for resolution on demurrer; however, "in some circumstances, a court may be able to 'say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or misled by [the defendant's statement].' "  (*Simpson v. The Kroger Corp.*

16

(2013) 219 Cal.App.4th 1352, 1371.) This is one of those circumstances. Both before plaintiff submitted his bid (offer) and in notifying him that his bid was accepted (acceptance), Luxury Link told plaintiff — and, based on the allegations in his complaint, plaintiff understood — both that his payment was nonrefundable and that the Loretto package expired on May 12, 2011. The words "nonrefundable" and "expired on" are neither confusing nor misleading (and plaintiff does not contend otherwise)[9]: Luxury Link would not return plaintiff's payment, and plaintiff's ability to redeem the certificate from Luxury Link ended on May 12, 2011. Given that the payment was "nonrefundable" and the Loretto package "expired on May 12, 2011," a reasonable consumer would *not* likely be deceived or misled into believing that a refund would be received or a credit or another adjustment would be applied to a different vacation package following the failure to redeem the package before it expired. Under the guise of equitable concepts like "forfeiture," "contract of adhesion," and "unfair, deceptive and illegal practices," plaintiff wants to rewrite the Contract by requiring Luxury Link to undertake responsibilities that

---

[9]     Plaintiff alleges that the word " 'non-refundable' " is ambiguous, but does not argue that the word has a meaning other than what it says — not to be returned to plaintiff. Instead, he presents authority in his briefing that an ambiguity cannot result in forfeiture (*Smith v. Baker* (1950) 95 Cal.App.2d 877, 883 [forfeitures will not be not enforced " 'if they are couched in ambiguous terms' "]; *ABI, Inc. v. City of Los Angeles* (1984) 153 Cal.App.3d 669, 682 [only " 'express, unambiguous language' " will support a forfeiture]) and argues that *because he suffered a forfeiture*, the word nonrefundable is therefore ambiguous. Not only is such reasoning illogical, we have already concluded at part II.C., *ante*, that Luxury Link's refusal to accommodate plaintiff's extra-contractual demands did not result in a forfeiture. With plaintiff's premise (that he suffered a forfeiture) disproved as a matter of law, his conclusion (that the word nonrefundable is ambiguous) cannot follow.

17

were not among those intended by either of the parties — or certainly not by Luxury Link — "at the time of contracting."  (Civ. Code, § 1636; see *Klein*, *supra*, 202 Cal.App.4th at p. 1385 ["fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract"].)

The court did not err in sustaining Luxury Link's demurrer to the fifth cause of action.

5.      *Fourth Cause of Action — UCL*

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL (Bus. & Prof. Code, § 17500 et seq.)]."[10]  (Bus. & Prof. Code, § 17200.)  The UCL has a broad scope that allows in part for " 'violations of other laws to be treated as unfair competition that is independently actionable.' "  (*In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1266.)

In his fourth cause of action, plaintiff alleges what he contends to be Luxury Link's unlawful acts, unfair acts and fraudulent acts.  None of these acts, however, provides a basis on which to assert a UCL claim given our conclusion at part II.C., *ante*, that Luxury Link's refusal to accommodate plaintiff's extra-contractual demands did not result in a forfeiture.

Plaintiff alleges that Luxury Link's conduct was "unlawful," because the Contract (or a part of it) is unconscionable, relying on Civil Code sections 1442, 1670.5 and 1671.

---

10      We have dealt with untrue or misleading advertising under the FAL in part II.C.4., *ante*.

Because we have already concluded that neither section 1671 nor section 1670.5 provides an independent statutory basis on which to find the Contract unconscionable (see pts. II.C.1. & 2., *ante*), neither section provides a basis on which to find unfair competition under Business and Professions Code section 17200. The analysis and result are no different for Civil Code section 1442, which provides in full: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." First, because this statute does not establish what is or is not unlawful, it does not suggest what can or cannot be a predicate act for purposes of the UCL. Moreover, because the Contract does not contain a "condition involving a forfeiture," by its express terms Civil Code section 1442 does not apply. (*Ibid*.)

Plaintiff next alleges that Luxury Link's conduct was "unfair" because the Loretto package was sold "with illegal and deceptive language and expiration dates that result in forfeiture by [p]laintiff." Again, because plaintiff did not forfeit anything by failing to redeem the Loretto package before it expired, plaintiff has not alleged an unfair business practice for purposes of the UCL. To the extent plaintiff's allegations can be read to include untrue or misleading language related to the payment being "nonrefundable," we incorporate our analysis and conclusion from part II.C.4., *ante*.

Finally, plaintiff alleges that Luxury Link engaged in "fraudulent" conduct by misleading and deceiving the public in not disclosing that the failure to redeem the Loretto package by its expiration date would result in a forfeiture. By disclosing only that the package was " 'subject to availability' and 'non-refundable,' " plaintiff continues, a "reasonable consumer would construe this language to mean that the face value of the

package can be applied to other vacation packages." Regardless how a reasonable consumer might construe the disclosures regarding availability and refunds, because the failure to redeem the package prior to its expiration does not result in a forfeiture, plaintiff has not alleged a fraudulent business practice under the UCL.

The court did not err in sustaining Luxury Link's demurrer to the fourth cause of action.

6. *Sixth Cause of Action — CLRA*

The CLRA, Civil Code section 1750 et seq., " ' " 'established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." ' " ' " (*Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 91.)

In his sixth cause of action, plaintiff alleges that, by requiring plaintiff to forfeit the Loretto package when he did not redeem it before it expired, Luxury Link violated various subparts of subdivision (a) of Civil Code section 1770. More specifically, plaintiff alleges that the forfeiture resulted from Luxury Link's misrepresentations, false advertisements, and sales terms in the Contract that are "unconscionable" and involve "illegal penalty liquidated damages provisions." (*Id.*, subd. (a)(5), (7), (9), (14) & (19).)

In his opening brief, plaintiff focuses only on what he contends is Luxury Link's use of " 'an unconscionable provision in the [C]ontract' " under Civil Code section 1770, subdivision (a)(19). Although plaintiff does not state exactly which provision(s) of the Contract may be unconscionable, he tells us that unconscionability is to be determined

20

under Civil Code section 1670.5. However, as we explained at part II.C.2., *ante*, under Civil Code section 1670.5, unconscionability is an affirmative defense, not the basis for affirmative relief. (*California Grocers*, *supra*, 22 Cal.App.4th at p. 217.)

The result is no different even if we consider the complaint's allegations of forfeiture without plaintiff's specific reliance on unconscionability in his appellate brief. Plaintiff received the benefit of the bargain that Luxury Link advertised and sold — namely, the right to a three-night stay at the Loretto *prior to May 12, 2011*. (See pt. II.C., *ante*.) Neither plaintiff's failure to request the stay prior to expiration of the package nor Luxury Link's refusal to accommodate plaintiff's extra-contractual demands after expiration of the package resulted in a forfeiture for which Luxury Link is responsible under the CLRA.

The court did not err in sustaining Luxury Link's demurrer to the sixth cause of action.

D.    *Leave to Amend*

Where the trial court sustains a demurrer without leave to amend, on appeal we must decide whether there is "a reasonable possibility that the plaintiff could cure the defect[s] with an amendment." (*Schifando*, *supra*, 31 Cal.4th at p. 1081.) If the appealing plaintiff can establish that an amendment would cure the defects, then he or she has met the appropriate burden of showing the trial court abused its discretion in denying leave to amend. (*Ibid.*)

Here, plaintiff neither requested leave to amend nor offered additional facts that might be sufficient to state a cause of action in either in the trial court or on appeal.

21

Although the complaint in this action is an original complaint, we (like the trial court) are aware that, given *Krinsk I*, the original complaint here is really the fourth iteration of an attempt by plaintiff (as counsel in *Krinsk I* and as counsel and plaintiff in this action) to plead causes of action based on the same Contract. Accordingly, the trial court did not abuse its discretion in denying leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

PRAGER, J.*

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22